**Ricky WYATT, by and through his Aunt and legal guardian Mrs. W. C. Rawlins, Jr., et al., Plaintiffs,**

**v.**

**Dr. Stonewall B. STICKNEY, as Commissioner of Mental Health and the State of Alabama Mental Health Officer, et al., Defendants,**

**United States of America et al., Amici Curiae.**

**Civ. A. No. 3195–N.**

United States District Court,
M. D. Alabama, N. D.

Dec. 10, 1971.

George W. Dean, Jr., Destin, Fla., and Jack Drake, University, Ala., for the plaintiffs.

William J. Baxley, Atty. Gen., and Gordon Madison and J. Jerry Wood, Asst. Attys. Gen., State of Alabama, Montgomery, Ala., for the defendants.

David L. Norman, Asst. Atty. Gen., Civil Rights Div., Dept. of Justice, Washington, D. C., and Ira DeMent, U. S. Atty., Montgomery, Ala., for amicus curiae, The United States of America.

James F. Fitzpatrick, Jeffery D. Bauman and Stephen M. Sacks, of Arnold & Porter, Washington, D. C., Charles R. Halpern, Washington, D. C., and Bruce J. Ennis, New York City, for amici curiae the American Psychological Assn., American Orthopsychiatric Assn., and American Civil Liberties Union.

ORDER

JOHNSON, Chief Judge.

In this class action, originally filed in behalf of patients involuntarily confined for mental treatment purposes at Bryce Hospital, Tuscaloosa, Alabama,[1] this Court on March 12, 1971, in a formal opinion and decree, 325 F.Supp. 781, among other things, held:

> The patients at Bryce Hospital, for the most part, were involuntarily committed through non-criminal procedures and without the constitutional protections that are afforded defendants in criminal proceedings. When patients are so committed for treatment purposes they unquestionably have a constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition. . . .
>
> Adequate and effective treatment is constitutionally required because, absent treatment, the hospital is transformed "into a penitentiary where one could be held indefinitely for no convicted offense." Ragsdale v. Overholser, 108 U.S.App.D.C. 308 [315], 281 F.2d 943, 950 (1960). The purpose of involuntary hospitalization for treatment purposes is *treatment* and not mere custodial care or punishment. This is the only justification, from a constitutional standpoint, that allows civil commitments to mental institutions. . . .

At the request of defendants, the Court in the March 1971 order allowed defendants six months to set standards and implement fully a treatment program so as to give each treatable patient a realistic opportunity to be cured or to improve his or her mental condition. The case is again submitted upon de-

---

1. On August 22, 1971, this Court granted plaintiffs' proposed amendment to enlarge the class to include patients involuntarily confined for mental treatment purposes at Partlow State School and Hospital and Searcy Hospital at Mt. Vernon, Alabama. This did not necessitate additional defendants since by authority of Title 22, Section 318, Code of Alabama, the defendant board has control and jurisdiction of all the mental institutions herein involved.

fendants' reports and the several objections thereto.[2]

In the matters presented to this Court by the parties, there seem to be three fundamental conditions for adequate and effective treatment programs in public mental institutions. These three fundamental conditions are: (1) a humane psychological and physical environment, (2) qualified staff in numbers sufficient to administer adequate treatment and (3) individualized treatment plans. The report filed by defendants with this Court, as well as the reports and objections of other parties who have studied the conditions at Bryce Hospital, demonstrates rather conclusively that the hospital is deficient in all three of these fundamental respects.

The psychological and physical environment problems are, in some instances, interrelated. For example, the dormitories are barn-like structures with no privacy for the patients. For most patients there is not even a space provided which he can think of as his own. The toilets in restrooms seldom have partitions between them. These are dehumanizing factors which degenerate the patients' self esteem. Also contributing to the poor psychological environment are the shoddy wearing apparel furnished the patients, the non-therapeutic work assigned to patients (mostly compulsory, uncompensated housekeeping chores), and the degrading and humiliating admissions procedure which creates in the patient an impression of the hospital as a prison or as a "crazy house". Other conditions which render the physical environment at Bryce critically substandard are extreme ventilation problems, fire and other emergency hazards, and overcrowding caused to some degree by poor utilization of space. In addition, the quality of the food served the patients is inferior. Only fifty cents per patient per day is spent for food, and sanitation procedures with regard to the preparation and service of food, commonly recognized as basic health practices and utilized at other such hospitals, are not followed at Bryce.

The second fundamental condition needed for effective treatment is a qualified and numerically sufficient staff. It is clear from the reports of Bryce's expert consultants that Bryce is wholly deficient in this area, both as regards its professional staff and its nonprofessional staff. More psychiatrists, Doctor of Philosophy level psychologists and qualified Medical Doctors are not only a medical but are also a constitutional necessity in this public institution. Special staff is needed to place the custodial patients still residing at Bryce. Although, as Rouse v. Cameron, 125 U.S. App.D.C. 366, 373 F.2d 451 (1966) points out, contact with the nonprofessional staff should be therapeutic, very little of this therapeutic value is realized at Bryce. The nonprofessional staff is poorly trained; nurses aides, for example, are required to have only a tenth grade education. Also there is no effective "in-service" training program for, or even any regular supervision over, the nonprofessional staff. The nonprofessionals are spread very thinly; thus, they are overworked, creating not only an inadequate situation for the patients but extreme stresses for individual aides. Both Bryce consultants agree with amici and plaintiffs that additional aides and activities therapists are a necessity.

The third necessary condition for an effective treatment program is individualized treatment plans. Bryce is also deficient in this area. Although every patient has been classified as to treatability, the records made on each patient are inadequate. Minimum medical standards require that periodic inquiries be

---

2. As directed, the United States of America formally appeared as amicus curiae. By leave of the Court the American Psychological Association, the American Ortho-psychiatric Association, and the American Civil Liberties Union have also appeared as amici curiae. The plaintiffs and all amici have filed objections to defendants' reports.

made into the needs of the patients with a view toward providing suitable treatment for them. Yet, at Bryce the records evidence no notations of mental change. They consist generally only of notations of the times and amounts of drugs given and participation in the Patient Operated Program, the Token Economy Program or the Level Program. Bryce's own consultant advises that treatment is geared primarily to housekeeping functions. The three main programs which have been implemented motivate the patients to some activity and do effect some degree of socialization, but at a minimum level. What programs there are do not yet seem to be operating effectively, partly because of the untrained staff members supervising them.

All the objections raised by amici and by plaintiffs generally are supported by the reports of Bryce's consultants. There seems to be a consensus of opinion among the experts that the treatment program at Bryce Hospital continues to be wholly inadequate. There are strong indications from the evidence before the Court, sparse as it is, that the conditions at Partlow and Searcy are no better than those at Bryce.

The primary and fundamental question remaining in this case, therefore, is not whether the defendants have promulgated and implemented a program that meets minimum medical and constitutional standards, but what procedure this Court should now pursue to ensure that this be done.[3] Although the goals defendants have set are rather vague, the defendants Stickney and Folsom,

who has since the earlier hearing in this cause been retained as Superintendent of Bryce Hospital, have to this point generally demonstrated good faith and a desire to attain minimum medical and constitutional standards in the three primary mental institutions now operated by the State of Alabama. Consequently this Court will again defer turning over the operation of these institutions to a panel of masters.

Nonetheless, minimum medical and constitutional standards for the operation of these institutions must be formulated. Defendants have been given an opportunity to perform this task and have failed. It must be kept in mind that plaintiffs' rights are present ones, and they must be not only declared but secured at the earliest practicable date. This Court has concluded that the most feasible procedure to be followed as to this phase of the litigation is for this matter to be set again for formal hearing, this time for the purpose of allowing the parties and amici the opportunity to present proposed standards that meet medical and constitutional requirements for the operation of the three mental institutions herein concerned and to present evidence by experts in support thereof. From this evidence this Court will establish standards and in due course order their implementation.

Accordingly, it is the order, judgment and decree of this Court that this cause be and the same is hereby set for hearing for the purposes hereinabove stated commencing at 10:00 a. m. on January 18, 1972.

3. As stated earlier, the treatment program now being implemented at Bryce is wholly inadequate. Likewise, the interim report filed by defendants on June 10, 1971, is inadequate. This report and the other matters presented to this Court upon this submission affirmatively reflect that defendants have formulated no standards for staffing, for improving the physical environment or for realistically improved treatment plans. While it may be that adequate financial means had not at the time of the filing of defendants' reports been made available by the Alabama Legislature to satisfy these medically and constitutionally mandated standards, the standards should at least have been formulated.