Harold Raymond **HOOKS** et al.,
Petitioners,

v.

Louie L. **WAINWRIGHT**, Director, Division of Corrections, State of Florida,
Respondent.

Harold Raymond **HOOKS**, Petitioner,

v.

Louie L. **WAINWRIGHT**, Director, Division of Corrections, State of Florida,
et al., Respondents.

Nos. 71–1011–Civ–J–S, 71–144–Civ–J–S.

United States District Court,
M. D. Florida,
Jacksonville Division.

Dec. 6, 1972.

Charles H. Livingston, Sarasota, Fla., for petitioners.

Daniel S. Dearing, Chief Trial Counsel Dept. of Legal Affairs, Office of the Atty. Gen., Tallahassee, Fla., for respondents.

John L. Briggs, U. S. Atty., Jacksonville, Fla., and Asst. Atty. Gen., Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., and Richard G. Klein-

dienst, Atty. Gen. of the U. S., U. S. Dept. of Justice, Washington, D. C., amicus curiae.

## ORDER AND OPINION OF COURT

CHARLES R. SCOTT, District Judge.

█ In these consolidated cases [1] plaintiffs,[2] now or heretofore inmates committed to the custody of the Florida Division of Corrections, have brought a civil class action in which they allege that they have been denied under color of state law certain rights secured to them by the United States Constitution. The issue posited, and here decided, is this:

Does the state have an affirmative federal constitutional duty to furnish prison inmates with expensive law libraries or to provide inmates with professional or quasi-professional legal assistance?

This Court hereby concludes that the state does have such a duty and orders the parties, as well as the United States of America as *amicus curiae*, to submit proposals for implementation.

█ This Court is satisfied that it has jurisdiction. 28 U.S.C. § 1343(3), 2201; 42 U.S.C. § 1983; Hooks v. Wainwright, 457 F.2d 502 (5th Cir.1972) (instant case); Gilmore v. Lynch, 319 F. Supp. 105 (N.D.Cal.1970), aff'd sub nom. Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971).

In Case No. 71–144–Civ-J-S, Harold Hooks, then an inmate of the Florida Division of Corrections, confined at the Avon Park Correctional Institution, filed this lawsuit which frontally attacked the sufficiency of legal services provided inmates. Specifically, the suit sought to have the prison law library facilities upgraded or, in the alternative, to have the state provide counsel to assist prisoners in their legal endeavors.[3] This Court

dismissed the case but without prejudice to the right of petitioner to refile should any subsequent ruling of the Supreme Court of the United States essentially support the relief sought. This Court noted the decision in Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970), and the then pending appeal therefrom. The plaintiff then appealed this case to the United States Court of Appeals for the Fifth Circuit. Subsequently, the Supreme Court of the United States affirmed sub nom. the opinion of the three-judge district court in Gilmore v. Lynch, *supra*. *See* Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). Noting this affirmance, the Court of Appeals for the Fifth Circuit, 457 F.2d 502, then vacated this Court's dismissal and remanded the case for reconsideration in light of Younger v. Gilmore, *supra*.

Prior to the Fifth Circuit's ruling, plaintiff Hooks and two others caused to be filed a substantially identical action which is Case No. 71–1011–Civ-J-S. The only significant difference is that the subsequent suit was brought as a class action.

This Court then appointed counsel to represent plaintiffs and consolidated the cases. Counsel for plaintiffs then filed an amended complaint, and the case was tried on October 4, 1972. In the amended complaint petitioners allege that, in the absence of state provided counsel to assist inmates in pursuing existing post-conviction remedies, the defendants' failure to provide access to adequate law books and other law library materials denies petitioners and those of their class the constitutionally guaranteed and protected rights of due process of law, equal protection of the law and access to the courts.

With regard to the class action aspect of this case, this Court hereby finds

---

1. Unless otherwise noted, these cases will be treated identically.

2. Sometimes hereinafter "petitioners".

3. The initial complaint also alleged that the prison authority had a duty to provide inmates with typewriters. However, as this allegation and prayer does not appear in the amended complaint, it is here deemed moot and not at issue.

that the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied. First, this Court hereby specifically finds that the class is so numerous that joinder of all members is impracticable. Second, this Court hereby specifically finds that there are questions of both law and fact common to the class. Third, this Court hereby specifically finds that the claims of the representative parties are typical of the claims of the class. Fourth, this Court hereby specifically finds that the representative parties will fairly and adequately protect the interests of the class.

■ This Court concludes that this case may be and hereby is maintainable under Rule 23(b)(2) of the Federal Rules of Civil Procedure and hereby declares the class to be unitary and composed of all indigents who presently are or will hereafter be in the custody of the defendant Wainwright or the Florida Division of Corrections. *See* Fed.R. Civ.P. 23(c)(1).

■ In this case the members of the class are adequately and fairly represented by the representative parties who have now been afforded the assistance of counsel pursuant to this Court's appointment. This Court hereby concludes that it would serve no useful purpose to notice the members of the class and that justice will be fully and well served in the absence of such notice. *See* 3B Moore's Federal Practice ¶ 23.55.

■ In these cases plaintiffs seek a judicial declaration that the legal services presently afforded inmates are not sufficient to enable them to pursue fully the available avenues of post-conviction relief. This Court hereby specifically finds that the Florida Division of Corrections and its Director, defendant Wainwright, do not furnish or provide counsel to indigent inmates. Further, this Court hereby specifically finds that

those legal materials presently maintained in the various institutions of the Florida Division of Corrections are those listed in Respondent's Composite Exhibit No. F. Accordingly, this Court declares that the legal services presently afforded inmates are not sufficient and not adequate to enable inmates to pursue fully their available avenues of post-conviction relief and available avenues of relief for deprivations of civil rights.

■ In Gilmore v. Lynch, *supra*, there existed a prison regulation which limited the legal volumes provided inmates. Such a *de jure* restriction is not imposed in Florida but the distinction is one without a legal difference. In Florida the restriction is of a *de facto* nature, but it is as equally inhibiting to the indigent inmate as was the California regulation. In short, the mere failure of the defendants to supply indigent inmates with sufficient legal services has been a direct cause of the inability of such inmates to pursue fully the available avenues of post-conviction relief and available avenues of relief for deprivations of civil rights.[4]

■ Undoubtedly the plaintiffs in this case must not only allege that they are denied access to the courts, equal protection of the law and the due process of law, but they must also further show that these rights are affected by the *de facto* limitation imposed and that such infringements of their rights are of such a degree as to render the justifications offered by the state inadequate and unreasonable as a matter of law. This Court hereby finds that plaintiffs have met their burden of proof and are entitled to relief.

■ Reasonable access to the courts is a constitutional imperative. With regard to federal habeas corpus it has been nicely put that

[s]ince the basic purpose of the writ is to enable those unlawfully incarcer-

---

4. The absence of a relevant and controlling state statute or regulation vitiates

any necessity for a three-judge court in this case. *See* 28 U.S.C. § 2281, et seq.

ated to obtain their freedom, it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed.

Johnson v. Avery, 393 U.S. 483, 485, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). However, the constitutional protection of access to the courts is much broader, for it includes access to all courts, both state and federal, without regard to the type of petition or relief sought. U.S.Const. Amends. I & XIV, § 1.

Although it may not be essential that petitions seeking judicial relief include legal citations, the argument is simply not reasonable that legal authority is dispensable. Of course, a court may entertain a legal proceeding in which the position of one of the parties is devoid of legal authority or a legal proceeding in which one of the parties is without the aid of counsel. However, once before the court such a litigant is not *ipso facto* assured that he will be benefitted by a favorable decision, even though he may have a perfect case. Although the court has a duty to insure that justice is had for the *pro se* applicant as well as for the person who is represented by counsel, it is clear that the *pro se* applicant is yet not guaranteed that his petitions and complaints will be fully considered by the courts, because of his disability to present meaningfully his case.

■ The argument may be advanced that in this regard the *pro se* inmate is on an equal footing with other *pro se* litigants, but this analysis is deceptive and inaccurate. The prisoner, a person committed to the custody of a designated state agency, is effectively severed from society. He has and receives what the custodian grants, and nothing more.

If the indigent inmate has, or thinks he has, a claim which would entitle him to relief, he must himself advance it. And if he is without a source of legal authority when his critical contention rests upon an obscure but authoritative point, the very best prison writ-writer may be unable to provide meaningful assistance.[5] Simply put, in order to insure that inmates are not for this reason denied access to the courts, it is constitutionally mandated that the prison authority furnish indigent inmates with some form of legal assistance which to that extent assures meaningful access to the courts.

■ Equal protection of the law is constitutionally mandated, and this protection extends into every prison and to the most base and outcast members of their populations. The wealthy inmate is, by reason of that wealth, assured meaningful access to the courts; for he is advantaged with the qualitative legal services of his retained attorney. In turn, the attorney is not only benefitted by his legal education and experience but also by his ability to utilize written legal authorities. No one doubts the right of such a wealthy inmate so to pursue available post-conviction remedies and to pursue available avenues of relief for deprivations of his civil rights. On the other hand, the indigent inmate, who may be in a position to raise identical legal issues, has no attorney, scant written legal resources and probably no experience.

■ Surely no one would argue that a state government could constitutionally provide that inmates should be denied an opportunity to secure at their own expense legal assistance. To do so would be, at least to some of them, to deny an

---

5.  Plaintiff Hooks has filed herein a memorandum of law in which he has, *inter alia*, explained several instances in which he was disserved by the lack of adequate legal services. He concluded

[t]o be sure, I had access to the court in a technical sense. But without ac-

cess to some form of legal counsel, the procedures available to me were nothing more than meaningless rituals. I would have been just as well off to have been writing letters to Santa Claus. Petitioner's memorandum at 7 (filed herein November 27, 1972).

opportunity for meaningful access to the courts, to deny those unlawfully incarcerated an opportunity to obtain their freedom and to deny those unlawfully deprived of their civil rights an opportunity to obtain a redress of grievances. Under such circumstances constitutionally protected rights and guarantees would be but meaningless promises. As has been noticed, the failure of the state to furnish sufficient and adequate legal services has had the effect of denying indigent inmates those opportunities and rights which are constitutionally secured to them. Therefore, there has been an invidious discrimination on account of poverty. Plainly, the pecuniary ability to retain legal counsel bears no reasonable relationship to the discrimination. This discrimination is just as offensive to the Constitution as if it were written into positive law, for the state cannot do indirectly that which it cannot do directly. Consequently, to deny plaintiffs relief would be to deny them the equal protection of the law, for there can be no equal justice when justice depends on the amount of money a person has. This Court is duty bound to apply and enforce that which the Constitution demands. U.S.Const. Amend. XIV, § 1; Griffin v. Illinois, 351 U.S. 12, 76 S. Ct. 585, 100 L.Ed.2d 891 (1956); Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886); *see* Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L. Ed.2d 718 (1969); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.

2d 811 (1963); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); Douglas v. Green, 363 U.S. 192, 80 S.Ct. 1048, 4 L.Ed.2d 1142 (1960); Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959).

■ Finally, it is clear that unless an indigent inmate can reach the very threshold of the courts, all of the normal guarantees of due process do not come into play. Although he may have a claim which would entitle him to relief, absent the invocation of the judicial machinery the potential relief is merely a hollow promise. Thus, the inadequacy and insufficiency of the legal services provided indigent inmates effectively denies them the due process of law.

■ As against these considerations the defendants only implicitly advance one substantive justification: it is that the providing of legal services is economically costly.[6] This Court concludes that this justification, when weighed against the above considerations, is simply inadequate and unreasonable as a matter of law.[7]

Having affirmatively settled the issue of whether plaintiffs are entitled to relief, this Court is now brought squarely to questions regarding the extent and particulars of appropriate relief. This Court is not presently disposed to devise and mandate a system or plan of implementation. Therefore, as regards a plan for implementation, the parties, as well

---

6. Defendants have also argued that maintenance of library facilities is difficult since the volumes, or parts thereof, are subject to destruction or mutilation. The Court finds this argument inconsequential since this is a problem experienced in library facilities everywhere. Further, utilization of the library resources may be subject to reasonable regulations. Finally, once library facilities are available at the major institutions and once all inmates, regardless of their confinement location, are assured reasonable access thereto, a major motivation for illegal removal of library materials will not exist.

7. This understanding is not novel to the correctional world. For example, the American Correctional Association has noted the development of the law (*see* Respondent's Exhibit No. A) and has proposed "A.C.A. Guidelines for Legal Reference Service in Correctional Institutions" (*see* Respondent's Exhibit No. B) and other guidelines (see Respondent's Exhibit Nos. C and D). A seminar was sponsored by that organization in mid-1972 which considered this subject.

as the United States of America as *amicus curiae*, are hereinafter directed to submit comprehensive and detailed proposals for speedy implementation. Such plans should minimally include dispositions of the following issues:

1. The extent of professional or quasi-professional services which would be provided indigent inmates. The parties should consider, first, where, and in which institutions, these services would be provided; second, the nature and extent of the services which would be provided; and third, the method of access to such legal services of those indigent inmates confined in institutions other than those in which the legal services would be provided.

2. The extent of the law libraries which would be provided indigent inmates.

The parties should consider, first, where, and in which institutions, these law libraries would be placed; second, the detailed composition of each such law library; and third, the method of access to such law library materials of those indigent inmates confined in institutions other than those in which the law libraries would be provided.

3. The time frame within which implementation can be speedily perfected.

Lastly, this Court hereinafter appoints the United States of America as *amicus curiae* and directs that it file a proposed plan for implementation. This Court is of the opinion that in the administration of justice the public interest should be represented in this proceeding, that it will be of assistance to the Court to have the benefit of the views of counsel for the United States of America as *amicus curiae*, and that this Court is entitled, at any time, to call upon the law office of the United States to serve in that capacity. *Cf.* Universal Oil Products v. Root Refining Co., 328 U.S. 575, 66 S.Ct. 1176, 90 L. Ed. 1447 (1946).