**In re W. J. ESTELLE, Jr., Director, Texas Department of Corrections, et al., Petitioners.**

No. 75-1464.

United States Court of Appeals, Fifth Circuit.

July 24, 1975.

Rehearing and Rehearing En Banc Denied Oct. 6, 1975.

John L. Hill, Atty. Gen. of Tex., George R. Bedell, Daniel O. Goforth, Asst. Attys. Gen., Austin, Tex., for petitioner.

Jack W. Flock, Mike A. Hatchell, Tyler, Tex., William Bennett Turner, San Francisco, Cal., for David Ruiz and others.

Roby Hadden, U. S. Atty., Tyler, Tex., Gail Littlefield, Office of Public Accommodation & Facilities, J. Stanley Pottinger, Asst. Atty. Gen., Civil Rights Div., Dept. of Justice, Washington, D. C., for Public Accommodation & Facilities.

Before TUTTLE, GODBOLD and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge: *

This is an original proceeding for a Writ of Mandamus or of Prohibition against the Hon. William Wayne Justice, United States District Judge for the Eastern District of Texas, Tyler Division. Petitioner W. J. Estelle, Director of the Texas Department of Corrections (TDC), seeks a Writ, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), to prevent the further participation by the United States as *amicus curiae* or plaintiff-intervenor in *Ruiz v. Estelle*, No. 5523 (W.D. Tex., Tyler Div.). The petitioner alleges that "the trial court abuse[d] its discretion when it permitted the United States to intervene in *Ruiz*" and prays for a Writ ordering the trial court to dismiss the United States from the case.

## I.

Over three years ago, David Ruiz and seven other inmates of the Texas Department of Corrections filed suits under 42 U.S.C. § 1983 complaining that the TDC had violated their constitutional rights in several ways and asking for injunctive and declaratory relief. The trial court determined that the cases involved common questions of fact and law, and ordered that the cases be consolidated pursuant to Rule 42(a), F.R. Civ.P., into a single civil action under the style of *Ruiz v. Estelle*.

The trial court appointed counsel to represent the plaintiffs, and granted the plaintiffs' motion six months ago to file an amended complaint. The court further ordered the case to proceed as a class action, pursuant to Rule 23(b)(2), F.R.Civ.P., but deferred definition of the class.

Between the filing of the original complaints and the filing of the amended complaint, the court ordered the United States to appear in the case as *amicus curiae* "[i]n order to investigate fully the facts alleged in the prisoners' complaints, to participate in such civil action with the full rights of a party thereto, and to advise [the] court at all stages of the proceedings as to any action deemed appropriate by it."

On December 6, 1974, the trial court granted the motion of the United States to intervene and ordered its complaint in intervention filed.[1] In its capacity as plaintiff-intervenor, the United States has commenced substantial discovery. In addition to serving notice of depositions and to propounding interrogatories, the United States has a pending request

---

* This opinion through Part A of II *infra* is agreed to by Judge Morgan. The part of this opinion under heading B represents only the separate views of Judge Tuttle.

1. The gravamen of the amended complaint is two-fold: it alleges that the TDC subjects inmates to cruel and unusual punishment (by inadequately providing for their personal security and safety, by failing to provide minimally adequate medical care, and by forcing them to live and work under unsafe conditions), and that the TDC deprives its inmates of Due Process of Law by interfering with their access to lawyers and the courts (by impeding communications and punishing such communications).

pursuant to Rule 34, F.R.Civ.P., to inspect the TDC facilities in question and to interview inmates and employees.[2]

The petitioner moved to dismiss the United States as *amicus curiae* and as plaintiff-intervenor on January 30, and on February 5 to stay participation by the United States in the case pending a determination of its status. The trial court denied the petitioner's motions after a hearing and further denied a request to certify an interlocutory appeal of the ruling pursuant to 28 U.S.C. § 1292(b).

Thereafter on February 18, the petitioner filed a petition in this Court for a Writ of Mandamus and/or other extraordinary relief to prevent further participation by the United States in the case, and on February 28 this Court stayed "[a]ll proceedings involving or initiated by the United States" pending disposition of the petition. The case was set for argument at an expedited hearing. The petitioner claims that the trial court abused its discretion under Rule 24(b)(2), F.R.Civ.P., by permitting the United States to intervene in the case and that a Writ of Mandamus or Prohibition should be granted to bar further participation by the United States.

## II.

### A.

 The prerequisite standards for issuing an extraordinary Writ under the All Writs Act have been frequently rehearsed, although their meaning is sometimes conceptually elusive. *See* Bell, The Federal Appellate Courts and the All Writs Act, 23 Sw.L.J. 858, 862–67 (1969). However, the standard we set out ten years ago in *Miller v. Connally*, 354 F.2d 206, 208 (5th Cir. 1965), is still applicable as a general rule today:

"The Writs of Mandamus and Prohibition are granted sparingly. Such writs are 'reserved for really extraordinary causes,' *Ex Parte Fahey*, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041, 2043 (1947), and should be issued only when the right to such relief is 'clear and indisputable.' *United States ex rel. Bernardin v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 43 L.Ed. 559, 561 (1899). To some extent they are supervisory in nature and are used 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185, 1190 (1943). They are not to be used as a substitute for an appeal, or to 'control the decision of the trial court' in discretionary matters. *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106, 111 (1953)."

The Writ is thus a "drastic remedy," *Will v. United States*, 389 U.S. 90, 104, 88 S.Ct. 269, 278, 19 L.Ed.2d 305 (1967), that must not be used to regulate the trial court's judgment in matters properly left to its sound discretion, but that may be available to "confine the lower court to the sphere of its discretionary power," *Id.* No court has ever precisely defined "sphere of discretionary power," but it is clear that an extraordinary Writ may be appropriate to prevent a trial court from making a discretionary decision where a statute effectively removes the decision from the realm of discretion. *Cf. S.E.C. v. Krentzman*, 397 F.2d 55 (5th Cir. 1968).[3]

---

**2.** The petitioner has vigorously opposed the pending inspection. On Jan. 17, 1975, he issued a directive to all wardens of the various TDC units prohibiting interviews of employees by any agent of the United States Department of Justice. He opposed interviews and inspections on the ground that they would jeopardize "the security of the inmates, personnel and prison facilities." (Now, in this proceeding, the director further complains that the interviews and inspections would be unreasonably burdensome and expensive to the TDC.) The trial court has not yet ruled on the matter.

**3.** This is not to say, of course, that the trial court may only exercise discretionary judgment where a rule or statute specifically authorizes it to do so. Certain discretionary acts

The petitioner contends here that the trial court "abused its discretion" by allowing the United States to intervene permissively in *Ruiz* under Rule 24(b)(2), F.R.Civ.P. (quoted below). In essence, the petitioner's argument is that while Rule 24(b)(2) empowers the trial court to allow permissive intervention at its discretion, it does not allow the trial court to allow intervention by a litigant who does not manifest the requisite "interest" in the litigation as defined by the Rule.

■■■ However, even were we to hold that the United States lacked a requisite interest within the meaning of Rule 24(b)(2) and therefore that the trial court had abused its discretion by allowing intervention, the petitioner would not automatically be entitled to the extraordinary Writ he seeks. "Mandamus, it must be remembered, does not 'run the gauntlet of reversible errors.'" *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed. 106 (1953)." *Will v. United States*, supra, 389 U.S. at 104, 88 S.Ct. at 278. The Writ "may not be used to thwart the congressional policy against piecemeal appeals," *Id.* An order allowing intervention is interlocutory and may not be appealed immediately. *See Van Hoomissen v. Xerox Corp.*, 497 F.2d 180 (9th Cir. 1974); *Wright & Miller*, Fed.Prac. and Procedure: Civil § 1923. The proper remedy for review of such an order is appeal from final judgment. *See, e.g., S.E.C. v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); *Stell v. Savannah-Chathorn County Board of Education*, 333 F.2d 55 (5th Cir. 1964), *cert. denied sub nom. Roberts v. Stell*, 379 U.S. 933, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964). Were we to grant the Writ sought in this proceeding, we would be circumventing the rule of finality and subverting well-established lines of appellate review in matters of this sort.

■■■ It is no answer for the petitioner to argue that participation by the United States in *Ruiz* will result in burdensome and expensive discovery. In the first place, even the expense and inconvenience of a trial as a prerequisite to review has been held not to justify the issuance of mandamus without more. *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 30–31, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); *United States Alkali Assn. v. United States*, 325 U.S. 196, 202–203, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945). In the second place, moreover, the claim of hardship of which the petitioner complains here is either unexceptionable or premature. It is unexceptionable because it is no more than the full and vigorous discovery that a large, systemwide class action anticipates. In any event, the petitioner's complaint as to the scope and cost to him of the discovery sought by the United States is premature, because the trial court has yet to rule on the petitioner's motions to limit and prevent certain aspects of the enquiries proposed by the United States. The Federal Rules of Civil Procedure, especially Rule 26(c), provide a number of grounds for limiting discovery and protecting parties from unreasonable and unduly burdensome investigations and enquiries. Yet the petitioner has declined to invoke the panoply of protection offered by Rule 26(c), and instead has sought interlocutory review through the All Writs Act. This failure to invoke protection available in the district court makes the alleged hardship speculative, if not ephemeral, and only serves to underscore the dangers of truncating litigation by resort to extraordinary interlocutory review. In short, the petitioner has failed to demonstrate any hardship, let alone any irreparable harm,

---

lie within the inherent authority of the trial court, despite the lack of specific authorization by statute or rule. *See, e.g., Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281, *reh. denied*, 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed.2d 50 (1969), where the Supreme Court held that the district court had inherent authority to compel answers to interrogatories in habeas corpus proceedings, and thus that mandamus would not lie to prevent the district court from so ordering.

that has occurred or is likely to occur immediately. We see no reason to ignore the rule of finality and the clearly established modes of review for orders of the type in question.

### B.

Judge Morgan concludes that the petition should be denied for the reasons outlined above. While I agree that the petition should be denied, I believe firmly—because the petition raises an important question of first impression, and a question of the scope of the trial court's power under the Federal Rules of Civil Procedure—that it is appropriate to reach the merits of the question rather than resting the decision only on the reasons discussed above. *Cf. Schlagenhauf v. Holder,* 379 U.S. 104, 111, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); and *see, generally,* Note, Supervisory and Advisory Mandamus Under the All Writs Act, 86 Harv.L.Rev. 595 (1973).

Rule 24(b)(2), F.R.Civ.P., provides:

"Upon timely application anyone may be permitted to intervene in an action: * * * (2) *when an applicant's claim or defense and the main action have a question of law or fact in common.* When a party to an action relies for [a] ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the trial court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." [Emphasis added.]

The "claim or defense" portion of the rule has been construed liberally, and indeed the Supreme Court has said that it "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. United States Realty & Improvement Co., supra,* 310 U.S. at 459, 60 S.Ct. at 1055, 84 L.Ed. at 1293. *See also Textile Workers Union of America, CIO v. Allendale Co.,* 96 U.S.App.D.C. 401, 226 F.2d 765 (D.C. Cir. 1955); *United States v. Local 638, Enterprise Assn., Etc.,* 347 F.Supp. 164 (S.D.N.Y.1972). Two distinguished commentators have observed that "it appears that the intervenor-by-permission does not even have to be a person who would have been a proper party at the beginning of the suit . . ." *Wright & Miller, supra,* § 1911. *See also* Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 721, 732–36 (1968).

The United States, acting as respondent in this proceeding pursuant to Fifth Circuit Local Rule 22, contends that it satisfies the requirements of Rule 24(b)(2), and thus that the trial court acted within the sphere of its discretionary power in permitting it to intervene, on three grounds: 1) that it falls within the express language of the Rule, 2) that it has inherent authority to participate in litigation involving its interests (*e. g., In Re Debs,* 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 [1895]), and 3) that 28 U.S.C. § 517[4] provides a general statutory authorization for such participation. Because I agree with the United States on the first ground, I would find it unnecessary to reach the other two grounds.

The original complaint in this case, as well as the amended complaint and the complaint of the United States in intervention, were all grounded on 42 U.S.C. § 1983, which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territo-

---

**4.** 28 U.S.C. § 517 provides in pertinent part: "The Solicitor General, or any other officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State * * *."

ry, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

§ 1983 thus provides for private relief in civil actions from the deprivation of rights secured by the Constitution and its laws. The protection from deprivation of civil rights is not confined solely to civil redress, however; §§ 241 and 242 of Title 18 of U.S.C. provide for criminal penalties for the deprivation of such rights. The criminal statutes provide:

### § 241. *Conspiracy against rights of citizens.*

If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; * * * They shall be fined not more than $10,000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any terms of years or for life.

### § 242. *Deprivation of rights under color of law.*

Whoever, under color of any law, statute, ordinance, regulation, or custom, wilfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.

The conceptual overlap of the civil and criminal statutes is obvious: they are both aimed, virtually by the same operative language, at redressing the deprivation of civil rights under the color of state law. Indeed, as we have said before, the criminal and civil statutes are *in pari materia. Baldwin v. Morgan,* 251 F.2d 780, 789 (5th Cir. 1958). *See also Picking v. Pennsylvania R. Co.,* 151 F.2d 240, 248–48, *reh. denied,* 152 F.2d 753 (3rd Cir. 1945), *cert. denied,* 332 U.S. 776, 68 S.Ct. 38, 92 L.Ed. 361 (1947); *McShane v. Moldovan,* 172 F.2d 1016, 1020 (6th Cir. 1949). *See also State of Arkansas v. Central Surety & Ins. Corp.,* 102 F.Supp. 444, 448 (W.D.Ark.1952).

The effect of the overlapping coverage of these statutes is to grant power if not to place a duty on the United States to prosecute, with the criminal sanction, the same deprivations of rights of which the TDC inmates complain in their civil action. However, it is extremely doubtful that criminal penalties would be effective, or even fully adequate, to vindicate the coverage promised by §§ 241 and 242. The complaints allege widespread, systemic and systematic deprivations of civil rights; many of the alleged abuses, such as the inadequacy of medical treatment and of housing and working conditions, are the products of poor facilities and insufficient allocation of resources to meet minimal prisoner needs. The criminal sanction is singularly inappropriate in these instances, because it reaches only the individual or individuals attached to the facility and not the root of the deprivation—the facility itself. Even where the criminal sanction reaches those responsible for the policy implementation and administration that perpetuates inadequate facilities and conditions, penalties guarantee only that the specific individual in question will not continue so to act; they fail to insure that *no one* will act, or be placed in a position to act, in such a way as to continue deprivation of rights by the maintenance of constitutionally inadequate facilities. Were the United States to be limited to prosecutions under §§ 241 and

242 to relieve such deprivations of rights, enforcement of the Congressional protection embodied in the statutes would be reduced to isolated and seriatim remedies that would barely scratch the surface of such constitutional infirmities as are alleged to exist here. I decline, as the Supreme Court did in *United States v. Republic Steel Corp.*, 362 U.S. 482, 492, 80 S.Ct. 884, 890, 4 L.Ed.2d 903 (1960) to impute "to Congress a futility inconsistent with the great design of this legislation." Instead, I believe that where "criminal liability [is] inadequate to ensure the full effectiveness of the statute which Congress had intended," *Wyandotte Co. v. United States,* 389 U.S. 191, 202, 88 S.Ct. 379, 386, 19 L.Ed.2d 407 (1967), the United States may seek a civil "remedy that ensures the full effectiveness of the Act." *Id.*, 389 U.S. at 204, 88 S.Ct. at 387.

The principle of permitting civil relief where criminal sanctions are inadequate or ineffective is deeply rooted in the common law. *Cf. Texas & Pacific Ry. v. Rigsby,* 241 U.S. 33, 38–40, 36 S.Ct. 482, 60 L.Ed. 874 (1916). *See also J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). It is "in accordance with [the] general rule of the law of torts. *See* Restatement (Second) of Torts § 286." *Wyandotte Co. v. United States, supra,* 389 U.S. at 202, 88 S.Ct. at 386. There is no reason to deprive the United States, and those whose rights it is responsible to protect, of the benefit of the rule. *Id.*

I would hold, therefore, that the United States was entitled to seek civil relief in *Ruiz* based on the scope and the mandate of the protection guaranteed by analogous criminal statutes, and thus that the "claim" of the United States, within the meaning of Rule 24(b)(2), F.R. Civ.P., was not only "common" but identical to that asserted by the original *pro se* plaintiffs. Consequently, the trial court acted within the "sphere of [its] discretionary power" in permitting the United States to intervene permissively pursuant to the Rule.[5]

Accordingly, the petition for a Writ of Mandamus and/or other extraordinary relief is denied and the stay of proceedings in *Ruiz v. Estelle* entered by this Court on February 28 is vacated.

*It is so ordered.*

GODBOLD, Circuit Judge (concurring in part):

I concur in the conclusion in Part II of Judge Tuttle's opinion that mandamus should be denied. My analysis is, however, slightly different.

While petitioner employs the rubric of abuse of discretion it seems to me that this case does not fall neatly within that category. Rather petitioner's basic contention is that as a matter of law (and

---

**5.** I note that today's result is consistent with the practice of several district courts in this Circuit which have invited the United States to act as *amicus curiae* or have permitted its participation as plaintiff-intervenor in suits involving alleged system-wide health facilities. *See* I. Prison Cases: Hooks v. Wainwright, 352 F.Supp. 163 (M.D.Fla.1972); Gates v. Collier, 349 F.Supp. 881 (N.D.Miss.1972); *aff'd* 501 F.2d 1291 (5th Cir. 1974); Newman v. Alabama, 349 F.Supp. 278 (M.D.Ala.1972); *aff'd* 503 F.2d 1320 (5th Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (April 28, 1975); Costello v. Dugger, 353 F.Supp. 1324 (M.D.Fla.1972); II. Hospital Case: Wyatt v. Stickney, 334 F.Supp. 1341 (M.D.Ala.1971), 344 F.Supp. 373 (M.D.Ala.1972), 344 F.Supp. 387 (M.D.Ala.1972), *aff'd* 503 F.2d 1305 (5th Cir. 1974). Participation by the United States has been appropriate in these cases not only to vindicate the federal interests we have outlined above, but to insure that indigent plaintiffs receive the quality of legal representation commensurate with the rights of which they claim they have been deprived. I cannot ignore the fact that prisoners and mental patients are almost invariably indigents who are represented by unpaid or low-paid appointed counsel lacking the means and resources completely to develop their claims. Without the participation of the United States, meritorious claims might fail for sheer lack of legal manpower. I would not be comfortable with the obvious result—that only minor constitutional deprivations on a small scale could be successfully vindicated, while wide-spread, multifaceted deprivations went uncured due simply to the awesome magnitude of their evil.

not as a matter of discretion granted to the court under Rule 24)[1] the District Court was required to deny the petition of the United States to intervene. I would phrase that matter of law as being the question of whether the United States had the requisite interest to satisfy Rule 24. This threshold question of law is decided one way or the other like any other question of law, with no discretion involved. If the court decided that the government did possess the necessary interest, then the discretion provided by Rule 24 would come into play.

Thus the issue is not the trial judge's range of discretion, see *S.E.C. v. Krentzman*, 397 F.2d 55 (CA5, 1968), but an alleged error of law antecedent to any exercise of discretion. The coincidental existence of discretion in Rule 24 should not lead us to review by mandamus the antecedent question of law under the abuse of discretion rubric. A ruling on a question of law may be challenged as so egregiously erroneous that the court's action should be deemed a usurpation of power. See *United States Alkali Exp. Asso. v. United States*, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945); *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). Such an extremely bad judicial decision might justify mandamus under the rubric of "usurpation." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566, 1572 (1945). The question presented here is a close one. The trial judge's decision, if erroneous, was not so egregious as to constitute a usurpation of power.

Moreover, to the degree that usurpation may turn not on the closeness of the legal question but rather on the adverse effects on the aggrieved party, *cf., De Beers Consol. Mines, supra,* petitioner here is suffering no consequences of the type and magnitude that should cause us to exercise our power to issue extraordinary writs. Petitioner is in court as a defendant, and presumably he must go through trial in any event. While he objects to being subjected to discovery at the behest of the United States, the other parties plaintiff unquestionably have the identical right, though possibly not the same means and manpower, to pursue discovery.

Whatever the ultimate decision on the merits of this case, the question of the propriety of intervention by the United States can be considered on appellate review in the usual course of litigation.

I agree that interference by mandamus at this stage of these proceedings would be improper.

---

1. That discretion goes to the convenience of the parties, the smooth functioning of the courts, the fairness of intervention to each of the parties, and like factors.