MAYFLOWER DEVELOPMENT CORPORATION *vs.* TOWN
OF DENNIS.

Barnstable.   February 17, 1981. — March 30, 1981.

Present: GREANEY, ROSE, & DREBEN, JJ.

*Practice, Civil*, Interlocutory appeal, Parties, Intervention.

An order denying intervention under Mass.R.Civ.P. 24(a)(2) is a final
    order subject to immediate appeal, and one which, after appellate re-
    view, is to be affirmed or reversed.   [633-635]
A judgment creditor which had obtained an injunction restraining its
    debtor from disposing of the proceeds of any judgment which might be
    entered in its favor in a land damage action was not entitled as of right
    to intervene in the land damage action where its interest was ade-
    quately represented by the debtor, where the litigation would have
    been rendered more complex by the intervention, and where the debt-
    or's counsel had offered to accept the presence of the creditor's counsel
    on an amicus basis for purposes of planning trial strategy and the pres-
    entation of law and evidence.   [635-639]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 10, 1979.

Motions to intervene were heard by *Wagner*, J., and
*Keating*, J.

*Kenneth R. Berman* for Walsh & Sons, Inc.

*James F. Freeley, Jr. & James H. Quirk* for Mayflower
Development Corporation.

*Robert E. O'Neil*, Town Counsel, for the town of Dennis.

GREANEY, J.   Walsh & Sons, Inc. (Walsh), has appealed
from the denial of two motions in the Superior Court by
which it sought to intervene as of right, pursuant to Mass.
R.Civ.P. 24(a)(2), 365 Mass. 769-770 (1974),[1] in an eminent

---

[1] This portion of the rule reads, in pertinent part, as follows: "(a) Inter-
vention of Right.   Upon timely application anyone shall be permitted to

domain action pending between Mayflower Development Corporation (Mayflower) and the town of Dennis. We affirm the orders denying intervention.

The facts giving rise to the requests for intervention involve four separate lawsuits and may be summarized as follows. On March 15, 1971, one David McHugh mortgaged a parcel of beachfront property located in the town of Dennis to Bay Colony Federal Savings and Loan Association (Bay Colony) for $170,000. On April 8, 1971, Walsh, a contractor, sued McHugh[2] and another person in the Superior Court for Barnstable County for monies due and unpaid under a construction contract. McHugh was served with the writ in this action on April 8, 1971, and, on the same day, conveyed the beachfront property to Mayflower[3] for the sum of $1.00 subject to Bay Colony's mortgage. On July 1, 1977, Bay Colony foreclosed its mortgage and received a certificate of title to the property. Certain alleged improprieties in the foreclosure sale precipitated a lawsuit against Bay Colony by Mayflower and McHugh's executrix. On December 30, 1977, while Bay Colony held title to the property, the town took the parcel by eminent domain. On May 17, 1978, the Supreme Judicial Court summarily reversed the judgment which had approved Bay Colony's foreclosure. See *Mayflower Dev. Corp.* v. *Bay Colony Fed. Sav. & Loan Assn.*, 375 Mass. 787 (1978). After entry of the rescript, the parties reached an agreement whereby Bay Colony assigned its claim for damages arising out of the taking to Mayflower. On January 10, 1979, Mayflower

---

intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

[2] McHugh died in 1976, and his executrix, Patricia McHugh, has been substituted as a defendant in this action and in other cases where he has been named as a party.

[3] McHugh was a director and the treasurer and controlling shareholder of Mayflower.

filed an action under G. L. c. 79 in the Superior Court for Barnstable County against the town for an assessment of damages.

On February 8, 1979, Walsh recovered a judgment on its suit against the McHugh estate in the amount of $386,000.[4] It is represented that this judgment with accrued interest now approximates $700,000. Based on this judgment, Walsh filed an action, in the nature of a creditor's bill (G. L. c. 214, § 3[8], inserted by St. 1973, c. 1114, § 62), in the Superior Court for Norfolk County. This suit claimed that the original conveyance of the beachfront property in 1971 by McHugh to Mayflower was intended to hinder, delay or defraud creditors. It sought to set the conveyance aside, and to reach and apply in payment of Walsh's judgment McHugh's and Mayflower's interests in the eminent domain proceeding. On February 26, 1979, Walsh requested and obtained two preliminary injunctions in the Norfolk action, the pertinent terms of which are set forth in the margin.[5] The parties view the effect of these injunctions as permitting the land damage action to proceed to trial, but as freezing any funds generated in that action by way of settlement or judgment until the appeal from Walsh's judgment and the trial (and possible appeal) of the Norfolk action are completed.

---

[4] The judgment in this case is presently on appeal to this court.

[5] An injunction against Mayflower and McHugh's executrix restrained them from: "alienating, transferring, selling or otherwise disposing of their claims or causes of action against the Town of Dennis including, without limitation, the proceeds of (1) any judgment entered in their favor against the Town of Dennis; and (2) any amounts offered by way of settlement or compromise of their claims against the Town of Dennis."

An injunction against the town restrained it from: "paying to the defendants Patricia McHugh, executrix of the estate of David I. McHugh . . . and the Mayflower Development Corporation . . . any amounts in connection with their claims or causes of action against the Town of Dennis including, without limitation, the proceeds of (1) any judgment entered in their favor against the town of Dennis; and (2) any amounts offered by way of settlement or compromise of their claims against the Town of Dennis."

On November 13, 1979, Walsh filed its first motion to intervene as of right in the land damage case. The complaint accompanying the motion (see Mass.R.Civ.P. 24[c], 365 Mass. 770 [1974]), abstracted the history of the various litigations and asserted a cross-claim against Mayflower in which Walsh claimed an equitable interest by virtue of the preliminary injunctions in any proceeds payable to Mayflower from the land damage action. In connection with this cross-claim Walsh specifically sought: (a) an assessment of the damages due Mayflower as a result of the taking; (b) an order subordinating Mayflower's interest in any proceeds received by judgment or settlement to Walsh's claim; (c) an order directing the town to pay over any funds due Mayflower to Walsh for application to the judgment; and (d) preliminary injunctive relief restraining Mayflower and the town from entering into any settlement unless Walsh was made a party thereto.[6] A judge of the Superior Court denied the motion to intervene on December 13, 1979, and Walsh claimed an appeal from that order. A petition for relief brought under the first paragraph of G. L. c. 231, § 118, to a single justice proved unsuccessful, but led to Walsh's filing of a second motion to intervene.[7] On April 8, 1980, another judge of the Superior Court denied the second motion and Walsh claimed an appeal from that order. The two appeals have been consolidated for disposition.

1. Mayflower contends that the appeals from the orders entered in the Superior Court are interlocutory, and as a

---

[6] An affidavit filed by Walsh's counsel brought to the judge's attention the fact of Walsh's judgment and the contents of the Norfolk injunctions.

[7] In denying relief, the single justice noted that "[m]otions to dismiss and for summary judgment are under advisement" in the Norfolk action so that Walsh's "present interest in the eminent domain proceeding is not such that the denial of its motion to intervene was error." It appears that the only matter pending in the Norfolk action when this order was entered was a motion to dismiss, which was decided favorably to Walsh on January 28, 1980. Walsh construed the single justice's ruling as permitting it to reapply for intervention if the outstanding motion to dismiss was resolved.

consequence, that they should be dismissed. The language of Mass.R.Civ.P. 24(a)(2) was taken verbatim from that of Fed.R.Civ.P. 24(a)(2). This fact requires that "the adjudged construction . . . given to . . . [Fed.R.Civ.P. 24(a)(2)] . . . be given to . . . [Mass.R.Civ.P. 24(a)(2)] absent compelling reasons to the contrary . . . ." *Rollins Environmental Serv., Inc.* v. *Superior Court*, 368 Mass. 174, 179-180 (1975).

It is thoroughly settled in the Federal courts that one who has sought intervention as of right may immediately appeal from the denial of his application because his substantive rights are affected in a way which cannot be practically redressed in the appeal from the final judgment in the case.[8] See, e.g., *Sam Fox Publishing Co.* v. *United States*, 366 U.S. 683, 688 (1961); *Peckham* v. *Ronrico Corp.*, 211 F.2d 727 (1st Cir. 1954); *Kozak* v. *Wells*, 278 F.2d 104, 108 (8th Cir. 1960); *Philadelphia Elec. Co.* v. *Westinghouse Elec. Corp.*, 308 F.2d 856, 859 (3d Cir. 1962), cert. denied sub nom. *Pennsylvania Pub. Util. Commn.* v. *Westinghouse Elec. Corp.*, 372 U.S. 936 (1963); *Levin* v. *Ruby Trading Corp.*, 333 F.2d 592, 594 (2d Cir. 1964); *Mendenhall* v. *Allen*, 346 F.2d 326, 328 (7th Cir. 1965); *Atlantis Dev. Corp.* v. *United States*, 379 F.2d 818, 824 (5th Cir. 1967); *Nuesse* v. *Camp*, 385 F.2d 694, 698-699 (D.C. Cir. 1967). The Federal courts have differed only on the appropriate disposition once the merits of the application have been reviewed. All the courts agree that an erroneous denial of a motion to intervene of right requires that the order denying intervention be reversed. See 7A Wright & Miller, Federal Practice and Procedure § 1923, at 628-629, and cases collected at n.72 (1972). On the other hand, if it was determined that intervention had been properly denied, the cases

---

[8] An order granting leave to intervene is interlocutory and cannot be appealed as of right. *Kris Petroleum, Ltd.* v. *Stoddard*, 221 F.2d 801, 802 (9th Cir. 1955). *In re Estelle*, 516 F.2d 480, 484 (5th Cir. 1975), cert. denied, 426 U.S. 925 (1976). *United States* v. *American Inst. of Real Estate Appraisers*, 590 F.2d 242 (7th Cir. 1978). 7A Wright & Miller, Federal Practice and Procedure § 1923, at 626 (1972).

disagree as to the appropriate disposition. Some earlier decisions (see, e.g., *Sam Fox Publishing Co.* v. *United States, supra* at 688; *Thompson* v. *Broadfoot,* 165 F.2d 744, 745 [2d Cir. 1948]; *Rosenblum* v. *United States,* 300 F.2d 843, 844 [1st Cir. 1962]), viewed the appeal as technically interlocutory and ordered it dismissed, while later cases (see, e.g., *Mendenhall* v. *Allen, supra* at 328; *Edmondson* v. *Nebraska,* 383 F.2d 123, 128 [8th Cir. 1967]; *Martin* v. *Kalvar Corp.,* 411 F.2d 552, 553 [5th Cir. 1969]) have simply affirmed the order. The latter course is now recognized as the preferred disposition (see discussion in 7A Wright & Miller, Federal Practice and Procedure, *supra* § 1923, at 626-630). We hold that an order denying intervention under Mass.R.Civ.P. 24(a)(2) is a final order subject to immediate appeal, and one which, after review, is to be affirmed or reversed.

2. To intervene as of right Walsh was required to establish first, that it had an interest in the eminent domain action, second, that it was so situated that disposition of the action may as a practical matter impair or impede its ability to protect that interest, and third, that its interest was not being adequately represented by existing parties.[9] There is no convenient rule of thumb for deciding when these requirements have been satisfied. Rather, each case must be analyzed in a practical manner because the rule "is not limited strictly to legal or equitable concerns." *Motor Club of America Ins. Co.* v. *McCroskey,* 9 Mass. App. Ct. 185, 189 (1980). See *Nuesse* v. *Camp, supra* at 700. As a general guide, consideration should be given to the interests of the would-be intervener in having a prompt resolution of a problem, to the interests of the initial parties in maintain-

---

[9] Walsh was also required to make the application in a timely manner. Even though Mayflower's counsel may have done considerable work in preparing the land damage case, we find in all the circumstances that Walsh's application ten months after the commencement of the land damage suit was seasonable and we reject Mayflower's contention to the contrary. See *Kozak* v. *Wells,* 278 F.2d 104, 109 (8th Cir. 1960).

ing a simpler and quicker trial, and to the interests of the court in efficiently managing its docket. See *Atlantis Dev. Corp.* v. *United States, supra* at 824; *Nuesse* v. *Camp, supra* at 700; *Motor Club of America Ins. Co.* v. *McCroskey, supra* at 189. See also Kennedy, Let's All Join In: Intervention Under Federal Rule 24, 57 Ky. L.J. 329, 330-331 (1969); Comment, The Litigant and the Absentee in Federal Multi-party Practice, 116 U.Pa.L.Rev. 531, 531-533 (1968).

There is no serious dispute that the Norfolk injunctions gave Walsh an equitable lien on Mayflower's potential recovery in the land damage case. This satisfies the "interest" prong of the rule. See *Alper* v. *MacPhearson,* 318 Mass. 433, 436 (1945); *Salvucci* v. *Sheehan,* 349 Mass. 659, 662 (1965). It was disclosed at oral argument on the case that Walsh had procured additional security for payment of the judgment in the form of a $200,000 bond and by way of an attachment on some property in McHugh's estate, the equity value of which remains undetermined. Since Walsh's ultimate objective is full satisfaction of its judgment, this security, together with the lock on the recovery in the condemnation case, considerably weakens the force of its argument that an unfavorable disposition of the land damage suit would totally impair its chance of recovery on the judgment.[10] Despite this, we will give Walsh the benefit of the doubt as to the existence of the rule's second prong and direct the inquiry to the rule's third prong — whether Walsh has shown that its interests are inadequately represented by Mayflower.

The question whether the prospective intervener is adequately represented necessarily turns to a comparison of the interests asserted by the applicant and the existing party. "If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not ade-

---

[10] It also alleged that a pro tanto of $225,000 has been awarded in the land damage action.

quately represented. If this interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate. Finally, if his interest is similar to, but not identical with that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." 7A Wright & Miller, Federal Practice and Procedure, *supra* § 1909, at 524. These interests should be compared "from the perspective of the result sought by [the] proposed intervener vis-a-vis the result sought by the existing party." *United States* v. *International Business Mach. Corp.*, 62 F.R.D. 530, 536-537 (S.D. N.Y. 1974). See *Moore* v. *Tangipahoa Parish Sch. Bd.*, 298 F.Supp. 288, 292 (E.D. La. 1969).

So viewed, the interests of Walsh and Mayflower share much in common. Both seek to obtain the highest possible recovery against the town. To be sure, the parties disagree on what should be done with a recovery if one is obtained, but the resolution of that disagreement is subordinate to their more pressing common objective. Mayflower knows that the proceeds of any recovery are frozen. It can be presumed that Mayflower is motivated by a realization that neither its shareholders nor the McHugh estate can hope to receive anything unless the land damage recovery is substantial. It appears from what little is known about the case (see note 10, *supra*) that the taking of this beachfront property might offer the promise of such an award. The other security held by Walsh and the potential for a good recovery in this case make it unclear whether Walsh, if it prevails in its other actions, will be entitled to all of the proceeds resulting from the taking. Thus, this is not a case where Walsh can be said to be the real party in interest so as to be entitled as of right to its own counsel. Compare *Sullivan* v. *Farrell*, 383 Mass. 119, 122 (1981). We think

that the interests of Walsh and Mayflower converge to the point where concrete "adversity of interest, collusion, or nonfeasance" had to be demonstrated before intervention was required. *Virginia* v. *Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). See *Stadin* v. *Union Elec. Co.*, 309 F.2d 912, 919 (8th Cir. 1962), cert. denied, 373 U.S. 915 (1963); *Ordnance Container Corp.* v. *Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973); *Peterson* v. *United States*, 41 F.R.D. 131, 133 (D. Minn. 1966); Shapiro, Some Thoughts on Intervention Before Courts, Agencies and Arbitrators, 81 Harv. L. Rev. 721, 748 n. 119 (1968). The facts, for example, do not generate the sort of controversy which may arise when a tenant has a right to recover eminent domain damages to unamortized leasehold improvements, and the successful assertion of those rights may diminish the award for the fee. As to adversity, Walsh adds to what has already been discussed only that Mayflower's counsel would be involved in a "fundamental conflict of interest" if they were left to carry Walsh's banner in the case. This assertion is not supported by anything firm in the record, nor is it developed by any argument of substance in Walsh's briefs. As has been noted, it is disproved to a great extent by the incentives inherent in Mayflower's position. See *Ionian Shipping Co.* v. *British Law Ins. Co.*, 426 F.2d 186, 189 (2d Cir. 1970); *Watkins* v. *United States*, 462 F. Supp. 980, 991-992 (S.D. Ga. 1977), aff'd per curiam, 587 F.2d 279 (5th Cir. 1979). We reject this contention as conjectural. There is no indication of any collusion between Mayflower and the town. Nor is there any hint of nonfeasance on the part of Mayflower's trial counsel in the handling of a case which by its nature is typically uncomplicated. Indeed, the record indicates that Mayflower's counsel have fought long and hard with considerable success in its litigation against Bay Colony to reach the point where they can present the land damage claim to a trier.

Whatever doubts might remain are resolved against intervention by two additional considerations. First, Walsh sought to enter the suit on terms which would have incorpo-

rated the substantive claims of the Norfolk suit into the land damage case. The judges below could have conditioned intervention on the abandonment or postponement of some or all of those claims, but in the absence of such an offer by Walsh, they were not required to do so. The prospect of more intricate litigation which could have delayed trial of the primary suit or rendered the entire proceedings more difficult to manage, and the potential for presentation of thorny issue preclusion questions if the Norfolk action remained extant, were factors to be considered.[11] See *Edmundson* v. *Nebraska, supra* at 127. Second, it appears that Mayflower's counsel extended an offer to accept the presence of Walsh's counsel on an *amicus* basis for purposes of planning trial strategy and the presentation of evidence and law. This offer still remains open and if accepted should go a long way towards alleviating some of Walsh's concerns. After allowing the motion judges some discretion for their view of the circumstances in a more concrete setting (see *Rios* v. *Enterprise Assn. Steamfitters Local 638*, 520 F.2d 352, 355 [2d Cir. 1975]; *Virginia* v. *Westinghouse Elec. Corp., supra* at 216), we conclude that Walsh has not made out a case for reversal of their orders.

The orders denying intervention accordingly are both affirmed.

*So ordered.*

---

[11] This is not to imply that the Barnstable and Norfolk actions cannot be consolidated under Mass.R.Civ.P. 42(a), 365 Mass. 805 (1974), nor do we imply that an intervener cannot assert counter or cross claims.