410                                    28 Mass. App. Ct. 410

Peabody Federation of Teachers, Local 1289 v. School Committee of Peabody.

PEABODY FEDERATION OF TEACHERS, LOCAL 1289, AFT,
AFL-CIO, *vs.* SCHOOL COMMITTEE OF PEABODY.

No. 89-P-578.

Essex. January 24, 1990. - March 22, 1990.

Present: ARMSTRONG, CUTTER, & KASS, JJ.

*Practice, Civil*, Intervention. *Labor*, Fair representation by union.

Discussion of the circumstances under which a party is allowed to inter-
vene in litigation as matter of right under Mass.R.Civ.P. 24(a)(2).
[412-414]

A member of a union, which was litigating with her employer as the mem-
ber's representative, was not entitled to intervene in that litigation on
her own behalf; if the union failed in its duty to represent the member
fairly, her remedy was against the union. [414-416]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 13, 1983.

After entry of judgment a motion to intervene was consid-
ered by *John T. Ronan, J.*

*William H. Sheehan, III*, for Carol Robbins.

*Joseph R. Lettiere* for the plaintiff.

*Daniel B. Kulak*, Assistant City Solicitor, for the defend-
ant, submitted a brief.

KASS, J. We consider the right of a member of a labor
union to intervene in litigation between the union and the
employer. Carol Robbins, a member of the Peabody Federa-
tion of Teachers, Local 1289, AFT, AFL-CIO (the union)
moved to intervene under Mass.R.Civ.P. 24(a)(2), 365 Mass.
769 (1974), after entry of judgment in an action between the
union and the School Committee of Peabody (school commit-
tee). A judgment was entered on the basis of an agreement
for judgment which Robbins claims was adverse to her inter-
ests. We affirm denial of the motion to intervene.

It is necessary to sketch the history which led to the effort by Robbins to participate in the contest in her own right. Between 1983 and 1986, the school committee had increased the maximum class size in its schools from 28 to 32. By increasing class size, the school committee was able to eliminate twelve teaching positions, one of which was held by Robbins, a tenured elementary school teacher. Laid off, but not discharged from the rolls of Peabody teachers, Robbins was placed on a priority status list for recall should teachers need to be hired in the system. A collective bargaining agreement which the union and the school committee had entered into in September, 1982, and which was effective during the period in question, provided for a maximum class size of 28 students.

Before the increase in class size and consequent layoffs occurred, the union, in anticipation of those events — the intent to increase class size had been announced — had initiated a grievance about violation of the maximum class size clause. An arbitrator ruled in favor of the union, but the school committee took the position that it was not bound by the collective bargaining agreement because determination of class sizes was a matter within its exclusive managerial prerogative.

Thereupon the union brought an action in Superior Court to confirm the arbitrator's award and to enforce the class size provision of the collective bargaining agreement. We may leap frog over a variety of proceedings which ensued before the Superior Court and side excursions to the Labor Relations Commission to July, 1988, when the case had come before this court and we decided, among other things, that the arbitrator had been right.[1] The committee could not rely upon its exclusive managerial prerogative to defeat specific enforcement of the class size provisions in the collective bargaining agreement. We remanded the case to the Superior Court, essentially for a determination of the back pay payable to the teachers who had been laid off.

[1] Our decision was in an unpublished order. See 26 Mass. App. Ct. 1107 (1988). The order was dated July 12, 1988.

Among the laid-off teachers, Robbins was something of a special case. As long as she was on the recall list, she was carried as a tenured, albeit, unpaid teacher by the school system. During the winter of 1983-1984, Robbins was pressed for funds to meet educational expenses of her children. If she adopted the expedient of resigning her teaching position, she could secure a refund of her contributions to the State Teachers' Retirement Fund. Robbins did so on January 16, 1984. For the school year 1986-1987, she returned to teaching in the Peabody school system and continues in that capacity to date.

Upon remand to the Superior Court, the union and the school committee proceeded to negotiate a settlement of the teachers' claims. Whether Robbins was entitled to back pay between the time of her resignation and her reemployment by the school system was a subject of contention. The difference was considerable: she would receive $6,000 with interest for the period between her layoff and resignation; she would receive $38,000 if the period were to run from her resignation to the time of her renewed employment. A lawyer for the union explained the alternate positions to Robbins on February 6, 1989. Three days later, on February 9, 1989, the union's lawyer telephoned Robbins and informed her that she would receive from the settlement $11,663.97, i.e., $6,000 plus interest. On February 15, 1989, the union and the school committee filed a comprehensive agreement for judgment which included a detailed schedule of lost wages, less mitigation, for twelve teachers laid off as a consequence of the class-size violation. Robbins was listed on the schedule to receive gross damages of $11,663.97 for the school year 1983-1984. There were three other teachers who received compensation for less than the three school years during which the increased class size had been in effect.

Much disappointed by this result, Robbins on March 10, 1989, moved to intervene as matter of right under Mass.R.Civ.P. 24(a)(2), a motion which was denied.

1. *General criteria for intervention.* To intervene as matter of right under Mass.R.Civ.P. 24(a)(2), the moving party

must: (1) make timely application; (2) claim an interest relating to the property or transaction which is the subject of the action; and (3) be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest. Although lenity is the prescribed attitude in disposing of rule 24(a)(2) motions (*Selectmen of Stockbridge* v. *Monument Inn, Inc.*, 8 Mass. App. Ct. 158, 162 [1979]; *McDonald* v. *E.J. Lavino Co.*, 430 F.2d 1065, 1073 [5th Cir. 1970]), the trial court judge enjoys a full range of reasonable discretion in evaluating whether the requirements for intervention have been satisfied. Determination of a motion to intervene will not be reversed absent an abuse of that discretion. *Selectmen of Stockbridge* v. *Monument Inn, Inc., supra* at 162. *Carlson* v. *Withers*, 16 Mass. App. Ct. 924, 925 (1983). See *Coggins* v. *New England Patriots Football Club, Inc.*, 397 Mass. 525, 538 (1986), which deals, however with permissive intervention under Mass.R.Civ.P. 24(b), 365 Mass. 769 (1974).

As to timeliness, a motion to intervene made, as here, after entry of final judgment is seldom timely, although in limited circumstances of strong justification, the motion may be allowed. *Motor Club of America Ins. Co.* v. *McCroskey*, 9 Mass. App. Ct. 185, 187-188 (1980). *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 132 (1986). *Diaz* v. *Southern Drilling Corp.*, 427 F.2d 1118, 1125-1126 (5th Cir.), cert. denied, 400 U.S. 878 (1970). Among the things to consider are: (1) whether the applicant could have intervened earlier; (2) whether delayed intervention would prejudice the central parties in the action; and (3) the force of the applicant's particular need to intervene. *Ibid.* Smith & Zobel, Rules Practice § 24.4 (1975 & Supp. 1989).

Robbins' attempt to intervene came after a dispute had been resolved among the school committee, the union, and, derivatively, eleven teachers in addition to Robbins. That resolution was the culmination of a long course of arbitration, administrative agency, and judicial proceedings. Unlike the circumstances in *McDonnell* v. *Quirk, supra*, the case did not take a surprising turn which Robbins could not reasona-

bly have anticipated and, indeed, Robbins had been informed before the settlement was nailed down that recovery for the period after her resignation was in doubt. Not the least of the consequences of intervention and reopening the judgment would have been delay in the payment of back pay to the other entitled teachers. Additional legal expenses would be incurred which would likely deplete the settlement pot. On the timeliness test alone, the judge, as matter of discretion, might have denied the motion to intervene.

In considering Robbins' interest in the litigation and the impairment of that interest if she is not allowed to intervene, a more fundamental obstacle to her effort to intervene emerges.

2. *The right of an individual union member to participate in litigation arising out of a collective bargaining agreement.* Such rights as Robbins had to the maintenance of maximum class sizes, back pay, and reinstatement stemmed entirely from the collective bargaining agreement between the union and the school committee. See *Acuff* v. *United Papermakers & Paperworkers, AFL-CIO,* 404 F.2d 169, 172 (5th Cir. 1968), cert. denied, 394 U.S. 987 (1969). In its capacity as the bargaining agent, the union is the exclusive representative of the bargaining unit of teachers of which Robbins is a part. As a member of the bargaining unit, Robbins may not work the grievance machinery or maintain a judicial proceeding on her own. *Norton* v. *Massachusetts Bay Transp. Authy.,* 369 Mass. 1, 2 (1975). *Balsavich* v. *Local 170, Intl. Bhd. of Teamsters,* 371 Mass. 283, 286 (1976). *Frost* v. *Framingham,* 9 Mass. App. Ct. 843, 844 (1980). *Acuff* v. *United Papermakers and Paperworkers, AFL-CIO,* 404 F.2d at 171. Effective collective bargaining presupposes reasonably equal economic forces pitted against each other. To achieve that relative equality, the employees subordinate their individual voices to a more powerful collective one.

It would subvert the process if the union, as representative of the employees, could not deal in their behalf in a binding fashion. *Ibid.* If collective bargaining is to be fruitful, an employer must have some confidence in the union's authority.

*Vaca* v. *Sipes*, 386 U.S. 171, 191 (1967). In performing its representative function, a union may from time to time adopt positions which it considers in the interest of the preponderance of the membership but which are unsatisfactory to some individual members. That a union may lawfully do, so long as it represents its members fairly. As to the interests of an individual member, a union may not act arbitrarily, with animus against that member, with bad faith, or in an invidiously discriminatory manner. *Id.* at 184-186, 191-194. *Norton* v. *Massachusetts Bay Transp. Authy.*, 369 Mass. at 2. *Berman* v. *Drake Motor Lines, Inc.*, 6 Mass. App. Ct. 438, 445 (1978). *Trinque* v. *Mount Wachusett Community College Faculty Assn.*, 14 Mass. App. Ct. 191, 199 (1982).

In her motion to intervene, Robbins did not assert any adversity of interest between herself and the union, nor has she asserted or demonstrated animus by the union against her, collusion between the union and the school committee, or lack of diligence on the part of the union in pressing claims on her behalf. As to Robbins' fundamental complaint, that her layoff resulted from a violation of the collective bargaining agreement, the union had been persistent and successful.

Concerning her entitlement to back pay after she resigned as a member of the teaching staff, Robbins argues that her resignation was compelled by her wrongful layoff and the economic exigencies it produced. Her resignation, therefore, should be disregarded for purposes of calculating the period of her layoff. That is the position she wishes to place before the court, but there is no basis in the record for supposing that the union had not pressed Robbins' position or that it yielded that position out of animus, faithlessness, arbitrariness, or unfair discrimination as to Robbins. On the basis of the record there is no particular reason to doubt that the union gave some ground on its 100% position for two reasons: (1) because the position was tenuous; and (2) in order to nail down a settlement that would be advantageous to the balance of the members of the bargaining unit. The settlement by a union of an individual member's claim short of that to which the member claims entitlement does not war-

rant intervention unless there is a claim supported by some showing (e.g., an affidavit) that the union has sold the member out in some invidious, arbitrary, or unfair fashion.

Although Robbins may have had an interest in the litigation between the union and the school committee in the sense that some sort of personal recovery of money might accrue to her benefit, that interest was derivative of the position collectively taken on behalf of the union membership and did not entitle her to intervention.

Finally, there is the question whether Robbins would be able to protect her interest short of intervention. If the union had, indeed, failed her in its duty of fair representation, Robbins was not without remedy against the union. See *Vaca* v. *Sipes*, 386 U.S. at 182-183; *Trinque* v. *Mount Wachusett Community College*, 14 Mass. App. Ct. at 197-199.

The trial judge did not abuse his discretion in denying Robbins' motion to intervene.

*Order affirmed.*