GREGORY COSBY & others[1] *vs.* DEPARTMENT OF SOCIAL SERVICES & another.[2]

No. 90-P-884.

Worcester. December 5, 1991. - April 8, 1992.

Present: DREBEN, FINE, & GREENBERG, JJ.

*Practice, Civil,* Intervention. *Labor,* Collective bargaining, Public employment.

In an action by several members of a labor union seeking injunctive relief against their public employer, the union was entitled under Mass.R.Civ.P. 24(a)(2) to the allowance of its motion for leave to intervene as a defendant, where the union had made timely application [395]; where the litigation directly affected the union's interest in balancing conflicting policies underlying the seniority and affirmative action provisions of the applicable collective bargaining agreement, and it appeared that the disposition of the litigation might impair or impede the union's ability to represent the interests of its members through collective bargaining and grievance procedures [395-397]; and where there was nothing in the record before the motion judge that would have warranted a conclusion that the employer would represent the union's position adequately [397-398].

CIVIL ACTION commenced in the Superior Court Department on November 2, 1989.

A motion for leave to intervene was heard by *Charles M. Grabau,* J.

The case was submitted on briefs.

*Matthew D. Jones* for Local 509, Service Employees International Union, AFL-CIO, CLC.

*John W. Laymon* for the plaintiffs.

GREENBERG, J. We must decide the right of a labor union to intervene in litigation between several union members and their employer. The plaintiffs, who belong to Local 509, Ser-

[1]George Camble, Darlyne Hogan, and Esmeraldo Bonilla.
[2]The Commissioner of Social Services.

vice Employees International Union, AFL-CIO, CLC (the union), brought an action seeking injunctive relief against the Department of Social Services (DSS).[3] After a judge of the Superior Court granted the plaintiffs a preliminary injunction, but before the case had proceeded to trial, the union moved to intervene as a defendant under Mass.R.Civ.P. 24(a)(2), 365 Mass. 769 (1974). We reverse the order denying this motion.[4]

The background facts necessary to understand the union's desire to become a party are as follows. DSS hired the plaintiffs as provisional appointees (see G. L. c. 31, § 14) at various times between 1986 and 1988. None of the plaintiffs had been placed on the civil service list from which DSS draws permanent appointments (see G. L. c. 31, § 25). The last examination to qualify for certified civil service eligibility was administered in 1985. Each plaintiff holds the job title of Social Worker IV, serves as a supervisory social worker in the Worcester region, and is a member of a recognized minority group. At the time the plaintiffs commenced the action, they were the only minority supervisors in the Worcester area office.

In October, 1989, DSS decided to fill five permanent Social Worker IV positions which required, in turn, the displacement of five provisional workers who held Social Worker IV positions. Although eight other supervisors also had "provisional status," DSS "bumped" the plaintiffs because they were ostensibly among the five least senior provisional supervisors. The plaintiffs were given a choice: either remain in Worcester and serve as provisional Social Worker

---

[3]The complaint sought an order "restraining and enjoining the defendants from demoting [the plaintiffs] to . . . Social Worker III [positions] or reassigning [them] outside the Worcester area."

[4]A judge of the Superior Court denied the motion and gave the following reason: "I am not persuaded that Local 509 will adequately represent the plaintiffs. I base my ruling on a careful reading of the memo and particularly the affidavit of George Camble. The affidavit of Maria Rota, Esq., demonstrates that the Union has been dilatory and that its interests are represented by the defendant." In this posture, the order is subject to immediate appeal. See *Mayflower Dev. Corp.* v. *Dennis,* 11 Mass. App. Ct. 630, 634-635 (1981).

III nonsupervisors, or transfer to other regional offices and retain Social Worker IV status. The plaintiffs felt aggrieved by either alternative[5] and, after the union allegedly spurned their requests for assistance,[6] filed this action.

The union is a member of the Alliance, AFSCME/SEIU; AFL-CIO (Alliance), and has full authority, based on a collective bargaining agreement between the Alliance and the Commonwealth dated June 11, 1986, to process grievances and arbitrations for all persons employed by DSS holding the title Social Worker IV. The union's position is that the plaintiffs' complaint, in essence, alleges a violation of the affirmative action requirements of the collective bargaining agreement by DSS[7]; it follows, the union argues, that any resolution of the present litigation without its participation will harm all union members by disrupting the collective bargaining relationship and by encroaching upon the union's position as the exclusive bargaining representative.

To intervene as matter of right the union, the moving party, must: (a) make timely application; (b) claim an interest relating to the property or transaction which is the subject of the action; and (c) be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest, unless the ap-

---

[5]The plaintiffs allege in the complaint that they were uprooted from their former homes to join the Worcester office.

[6]This is a contested issue on the record before us.

[7]Article 6, § 2, of the agreement reads as follows: "The Union and the Employer agree that when the effects of employment practices, regardless of their intent, discriminate against any group of people on the basis of race [or] . . . sex . . . aggressive measures must be taken to redress the effects of past discrimination . . . and to ensure equal opportunity in . . . *demotion* or *transfer* . . . [The] parties acknowledge the need for positive and aggressive affirmative action." (Emphasis supplied.) We also note that the judge who ordered the preliminary injunction based his decision on both the above quoted language and on Article 14, § 4D, which apparently requires DSS to consider both "seniority" and "ability to do the job" when selecting employees for either reassignment or transfer. The plaintiffs failed to advance any specific legal theory in their complaint. However, since the plaintiffs argued, and the judge relied upon, a violation of the agreement as a basis for ordering a preliminary injunction, the interpretation of the agreement is a central issue in the case.

plicant's interest is adequately represented by existing parties. See Mass.R.Civ.P. 24(a)(2). We review the motion judge's decision under a traditional abuse of discretion standard. See *Smuck* v. *Hobson*, 408 F.2d 175, 178 (D.C. Cir. 1969) (en banc).[8]

(a) *Timely application.* The union's motion was timely. The trial on the underlying action had not yet commenced, nor on this record, had the parties engaged in extensive discovery. See Smith & Zobel, Rules Practice § 24.4 (1975 & Supp. 1991). Compare and contrast, for example, *Motor Club of America Ins. Co.* v. *McCroskey*, 9 Mass. App. Ct. 185, 187-190 (1980), and *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 132-133 (1986), where parties have sought to intervene after entry of judgment. See also *Peabody Fedn. of Teachers, Local 1289* v. *School Comm. of Peabody*, 28 Mass. App. Ct. 410, 413 (1990).

(b) *The union's interest and how it may be impaired.* A leading decision interpreting the meaning of "interest" for the purposes of intervention concluded that a flexible, rather than a rigid, approach is indicated and commented that "the

---

[8]While it has been observed that "an application for intervention of right seems to pose only a question of law" 7C Wright & Miller, Federal Practice and Procedure § 1902 (1986 & Supp. 1991), our decisions have stated that a "trial court judge enjoys a full range of reasonable discretion in evaluating whether the requirements for intervention [of right] have been satisfied[,]" *Peabody Fedn. of Teachers, Local 1289* v. *School Comm. of Peabody*, 28 Mass. App. Ct. 410, 413 (1990), and that review of an order on a motion to intervene will focus on whether the judge abused that discretion. *Ibid.* Under certain circumstances, allowing a party to intervene may amount to an error of law, see, e.g., *Check* v. *Kaplan*, 280 Mass. 170, 179-180 (1932) (predates rules of civil procedure); *Coggins* v. *New England Patriots Football Club, Inc.*, 397 Mass. 525, 539 (1986) (discussing permissive intervention); however, we are aware of no decision in the courts of this Commonwealth that has reversed the denial of a motion to intervene as matter of law under Mass.R.Civ.P. 24(a)(2). Moreover, since we are particularly concerned in the circumstances of this case with "protect[ing] practical interests," *Motor Club of America Ins. Co.* v. *McCroskey*, 9 Mass. App. Ct. 185, 189 (1980), and "comport[ing] with efficiency and due process[,]" *Cook* v. *Boorstin*, 763 F.2d 1462, 1468 (D.C. Cir. 1985) — factors which the judge may, in our view, properly consider — we hold that the "abuse of discretion" standard of review is appropriate here.

requirement should be viewed as a prerequisite rather than relied upon as a determinative criterion for intervention." *Smuck* v. *Hobson*, 408 F.2d at 179. See also 7C Wright & Miller, Federal Practice and Procedure § 1908 (1986 & 1991 Supp.). Because the union has a strong interest in maintaining its position as the exclusive bargaining agent for all employees, we conclude that the plaintiffs "may not work the grievance machinery or maintain a judicial proceeding on [their] own. *Norton* v. *Massachusetts Bay Transp. Authy.*, 369 Mass. 1, 2 (1975). *Balsavich* v. *Local 170, Intl. Bhd. of Teamsters*, 371 Mass. 283, 286 (1976). *Frost* v. *Framingham*, 9 Mass. App. Ct. 843, 844 (1980). *Acuff* v. *United Papermakers and Paperworkers, AFL-CIO*, 404 F.2d [169,] 171 [(5th Cir. 1968), cert. denied, 394 U.S. 987 (1969)]." *Peabody Fedn. of Teachers, Local 1289* v. *School Comm. of Peabody*, 28 Mass. App. Ct. at 414. Since the plaintiffs in their complaint and subsequent pleadings allege a discriminatory motivation behind DSS's decision to remove them from their current posts, we believe the union has an interest in both balancing the conflicting policies underlying the seniority provisions and the affirmative action requirements of the agreement, as well as preserving the integrity of the grievance process. See *EEOC* v. *American Tel. & Tel. Co.*, 506 F.2d 735, 741 (3d Cir. 1974) (labor union, if it desires, has right to intervene as defendant in Title VII litigation to protect the existing seniority provisions of its collective bargaining agreement). See also *Little Rock Sch. Dist.* v. *Pulaski County Sch. Dist.*, 738 F.2d 82, 84 (8th Cir. 1984). Contrast *Dilks* v. *Aloha Airlines, Inc.*, 642 F.2d 1155, 1157 (9th Cir. 1981). Ultimately, if the plaintiffs prevail at trial, other employees who are members of the union will be displaced.

The principles laid down in cases construing rule 24(a) require judicial balancing of practical considerations. See *Smuck* v. *Hobson*, 408 F.2d at 179; *Motor Club of America Ins. Co.* v. *McCroskey*, 9 Mass. App. Ct. at 189. Here, we believe those considerations weigh in favor of intervention. We have said that employees must normally resort first to

the grievance process before going directly to court; but if, among other things, the union and the employer — as the plaintiffs allege — "contrive together to subvert [the grievance machinery] . . . the employees are free to try judicial remedies." *Balsavich* v. *Local 170, Intl. Bhd. of Teamsters*, 371 Mass. at 286. The union, of course, questions the plaintiffs' characterization of its role in the controversy. Precisely because resolution of this question is a threshold issue to any further advancement of the plaintiffs' cause, we conclude that the union's participation as a party defendant — which will permit a judge to admit in evidence out-of-court statements bearing on the union's involvement in DSS's decision to demote or transfer the plaintiffs — is required in the interests of efficiency and judicial economy.

Again, using practical considerations as a guide, we believe that denying the union the right to intervene "may" impair or impede its ability to protect the interests of all its members in the collective bargaining process. While a judgment in this case for the employees would not, in all likelihood, bind the union technically under the principles of issue preclusion, rule 24(a) stretches beyond mere equitable or legal concerns. *Motor Club of America Ins. Co.* v. *McCroskey*, 9 Mass. App. Ct. at 189, citing *Nuesse* v. *Camp*, 385 F.2d 694, 700 (D.C. Cir 1967). A judgment might diminish the union's capacity as the exclusive representative of its members, who may begin to view litigation as a more effective measure than the grievance process. Moreover, the union might be affected because the Commonwealth would be bound, to some degree, in future negotiations, by a particular construction given to the agreement as a result of this litigation. Cf. *EEOC* v. *American Tel. & Tel. Co.*, 506 F.2d at 742.

(c) *The inadequacy of the employer to represent the union's interest.* The burden of showing that representation of the potential intervenor's interest is inadequate depends upon the relationships of the various parties. Here, where the union's " 'interest is similar to, but not identical with that of one of the parties, a discriminating judgment is required on

the circumstances of the particular case, but [the applicant] ordinarily should be allowed to intervene unless it is clear that the [existing] party will provide adequate representation for the absentee.' " *Mayflower Dev. Corp.* v. *Dennis*, 11 Mass. App. Ct. 630, 637 (1981), quoting from 7A Wright & Miller, Federal Practice and Procedure § 1909, at 524 (1972). Recognizing that DSS and the union's interests will be adverse in most other situations, we must conclude that the union's position will not be adequately represented, especially where nothing in the record leads us to a contrary conclusion. Given that the agreement lies at the core of this dispute, the voice of the other union members, who are bound by the agreement, cannot be considered sufficiently identical with DSS's interest in acquiring maximum control of its personnel decisions to justify a denial of the union's motion.

The order denying the union's motion to intervene is therefore reversed and an order shall enter allowing the motion.

*So ordered.*