386                  60 Mass. App. Ct. 386 (2004)

Johnson Turf and Golf Management, Inc. *v.* City of Beverly.

JOHNSON TURF AND GOLF MANAGEMENT, INC. *VS.* CITY OF
BEVERLY & others.[1,2]

No. 02-P-779.

Middlesex. October 14, 2003. - January 30, 2004.

Present: GREENBERG, DREBEN, & COWIN, JJ.

*Contract,* Municipality, Bidding for contract. *Municipal Corporations,*
Contracts. *Uniform Procurement Act. Practice, Civil,* Intervention.

In a civil action brought by an unsuccessful bidder (plaintiff) for a contract to
manage a golf and tennis club for the defendant city, in which a consent
judgment had been entered pursuant to a settlement agreement between the
plaintiff and defendant which, inter alia, awarded the plaintiff the contract
to operate the club, the judge erred in denying the postjudgment motion to
intervene by the successful bidder and then-current operator of the club,
where the motion was timely despite coming after judgment had been
entered, in that the circumstances under which the settlement agreement
arose caused an abrupt impairment of the intervener's interest; where the
intervener not only had its own significantly protectable proprietary inter-
est in the contract, but its ability to challenge the questionable consent
judgment served a valuable public interest to ensure compliance with
public bidding statutes; where the intervener's interest was neither remote
nor contingent; where the plaintiff and defendant did not adequately
represent the interest of the intervener; and where not allowing interven-
tion could have had a practical negative impact on the intervener's interest.
[389-393]

CIVIL ACTION commenced in the Superior Court Department on
December 19, 1997.

A postjudgment motion to intervene and set aside the judg-
ment was heard by *Peter M. Lauriat,* J.

*Joseph F. Hardcastle* for the intervener.

---

[1] Louis D. Bennett, Jack Altshuler, Dennis F. Crimmins, Patricia D. Grimes,
John D. Kenney, Daniel E. Klemis, Betty Murphy, Elizabeth Murphy, Arthur
Orecchia, James J. O'Leary, William A. Walo, and Natalie Fiore, in their
capacity as members of the Beverly Golf and Tennis Commission; and the
Beverly Golf and Tennis Commission.

[2] Friel Golf Management Company, Inc., intervener.

*Kevin M. Burke* (*Stephen R. Follansbee* with him) for the plaintiff.

*Robert A. Munroe* for the defendants.

GREENBERG, J. Friel Golf Management Company, Inc. (Friel), protests that a consent judgment between its rival, Johnson Turf and Golf Management, Inc. (Johnson), and the city of Beverly,[3] awarding Johnson a contract to manage Beverly's public golf course and tennis courts, violates G. L. c. 30B, the Commonwealth's public procurement law.[4] Consequently, Friel urges that its postjudgment motion to intervene as a party was erroneously denied by a Superior Court judge. We agree.

This, in outline, is the factual context and procedural setting of the dispute. In the fall of 1996, the city published a request for proposals (RFP) to qualified bidders to operate the Beverly Golf and Tennis Club (club) for a five-year period, with a five-year option to renew to be held by the city. As a result of procedural glitches not here relevant, on September 17, 1997, the city published a second RFP, and Johnson and Friel submitted the only two qualified bids. Johnson outbid Friel by $550,000. Even so, the city awarded the contract to Friel, concluding that Johnson had no "recent experience" operating a clay tennis court and lacked sufficient equipment to maintain the golf course in the manner contemplated by the RFP. Some members of the Beverly Golf and Tennis Commission downgraded Johnson's qualifications, citing "negative references" from other Johnson clients.

Aggrieved by the city's award of the contract to Friel, Johnson, on December 19, 1997, filed the instant action claiming violations of G. L. c. 30B, breach of an implied contract, violation of the public trust, and conspiracy. It sought money damages and injunctive relief to restrain the city's award of the contract to Friel. After a hearing on the plaintiff's motion for a preliminary injunction, a Superior Court judge, recognizing that, without an injunction, Johnson's remedy would be limited to bid preparation costs unless there was proof of bad faith, see *Peabody Constr. Co. v. Boston*, 28 Mass. App. Ct. 100, 105-106

---

[3]For ease of reference we refer to the defendants as the city.

[4]General Laws c. 30B, known as the Uniform Procurement Act, provides that certain municipal contracts be awarded by advertised competitive bidding.

(1989), enjoined the city from awarding the contract to Friel until January 8, 1998. On January 9, 1998, after the parties filed supplemental materials, she extended the preliminary injunction against the city with respect to contracting with any prospective club operators. With respect to all but one of Johnson's claims, however, she ruled that Johnson did not have a strong likelihood of success. She appropriately expressed her concern that "[i]t is not in anyone's interest that the [club] remain closed" and agreed with a suggestion Johnson's counsel had made at the hearing that a short-term contract be negotiated between Friel and the city to keep the club running pending completion of the trial. Her order dated January 9, 1998, accomplished that objective. By its terms, it prevented the city from executing a management contract with any entity except for a short period, to expire at the end of February, 1998. She noted that the appropriate ultimate remedy might be a rebidding of the contract in its entirety.

Friel, who had managed the club prior to the first bidding process, maintained the status quo under the order. On February 5, 1998, Friel moved, with the assent of the parties, to intervene in the instant case; that motion was allowed on the same day. By July, 1998, after the city had rebid the contract as suggested by the motion judge, Friel, for the third time, was the recipient of the award. On August 19, 1998, a status conference was held in the Superior Court on the underlying case. The parties agreed that Johnson would amend its complaint limiting its claims to money damages. Johnson, for reasons that do not appear in the record, agreed to drop its pursuit of the management contract. Friel was voluntarily dismissed as an intervener because Johnson limited its claims to money damages. This arrangement was memorialized in a "Proposed Agreement and Procedural Order" approved by another Superior Court judge on September 4, 1998.

Trial of Johnson's damage claims was bifurcated by order of the judge. Pursuant to Mass.R.Civ.P. 53(b)(2), as amended, 386 Mass. 1237 (1982), the judge referred the liability aspects of the case to a special master. On July 7, 2000, the master, after hearings, found that the city, acting through its mayor, James Scanlon, transgressed G. L. c. 30B in several material respects and

that the violations constituted "bad faith." A judge of the Superior Court adopted the master's findings and took the next step of scheduling a trial on damages.

At this juncture, the case took an unpredictable course. About thirty days prior to the scheduled trial, the city reversed itself and entered into a "Settlement Agreement" with Johnson which, among other things, awarded Johnson the contract for the operation of the club. It appears that Friel, which was no longer a party to the action, had no notice or opportunity to be heard. In August, 2001, a judgment entered incorporating by reference all of the terms of the agreement. Approximately three weeks later, Friel filed a "Motion to Re-intervene and to Set Aside [the] Judgment." Another judge, after a hearing, denied Friel's motion. Friel has appealed from that order.

*Analysis.* A judge should allow intervention as of right when (1) the applicant claims an interest in the subject of the action, (2) he is situated so that his ability to protect his interest may be impaired as a practical matter by the disposition of the action, and (3) his interest is not adequately represented by the existing parties. Mass.R.Civ.P. 24(a)(2), 365 Mass. 769 (1974).[5] We review the motion judge's decision under a traditional abuse of discretion standard. For a detailed explanation of that standard, in context of a rule 24(a) motion, see *Cosby* v. *Department of Social Servs.*, 32 Mass. App. Ct. 392, 395 n.8 (1992).

With respect to the threshold question of timeliness, it has been observed that "postjudgment motions to intervene, whether as of right or permissive, are seldom timely." *Bolden* v. *O'Connor Café of Worcester, Inc.* 50 Mass. App. Ct. 56, 61 (2000), and cases cited. In the circumstances here, we think that Friel can justify its failure to intervene earlier because of the September, 1998, agreement approved by a Superior Court judge. The reader will recall that Friel dropped its status as an intervener in the underlying case at that time because Johnson

---

[5]The motion judge wrote that he would treat Friel's motion to intervene under Mass.R.Civ.P. 24(b), 365 Mass. 769 (1974) (permissive intervention), because Friel failed to specify which section of the rule it invoked. However, his analysis focused on whether Friel had a protectable interest under rule 24(a)(2). For our purposes, it makes no difference because the label attached to a motion is not always dispositive, and we inquire whether any basis existed for the relief sought.

no longer claimed an interest in operating the club. It was only after Friel became aware of the abrupt turnaround evinced in the August, 2001, settlement agreement that its interest in operating the club became impaired. As we stated in *McDonnell v. Quirk*, 22 Mass. App. Ct. 126, 133 (1986), concerning a motion for postjudgment intervention, "[i]f the underlying action takes an unexpected turn, we perceive no reason why the third party cannot intervene to protect its position." See *Butts* v. *Zoning Bd. of Appeals of Falmouth*, 18 Mass. App. Ct. 249, 254 (1984).

It remains to ask, however, whether Friel has established a "significantly protectable" interest in the litigation. See *Bolden v. O'Connor Café of Worcester, Inc.*, 50 Mass. App. Ct. at 62, quoting from *Donaldson* v. *United States*, 400 U.S. 517, 531 (1971). We start with the proposition that the "interest" requirement should be viewed more leniently in cases that, as here, implicate questions of public interest. Not only does Friel have a proprietary interest in having a fair shot at the management contract, its ability to challenge the somewhat questionable consent judgment serves a valuable public interest to ensure compliance with public bidding statutes. See *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 835-836 (1984). See also *Conservation Law Foundation* v. *Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (commercial fishing groups permitted to intervene in action after consent decree had been reached setting timetable for governmental action).

Nor is Friel's interest remote or contingent. See and compare *Restor-A-Dent Dental Labs., Inc.* v. *Certified Alloy Prods., Inc.*, 725 F.2d 871, 874-876 (2d Cir. 1984); *Travelers Indem. Co.* v. *Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989). Unlike the circumstances in those cases, Friel's interest in obtaining the contract, by necessity, requires intervention. If Friel is not permitted to challenge the consent judgment, there will be a final judgment awarding the contract to Johnson. Such a disposition would not just diminish Friel's prospects, see *Cosby* v. *Department of Social Servs.*, 32 Mass. App. Ct. at 397, but would extinguish the possibility altogether.

The motion judge saw Friel's asserted interest somewhat differently. He concluded that the master's decision in July,

2000, which determined that the initial contract award to Friel violated G. L. c. 30B, not only put Friel on notice that intervention was required at that time, but also undermined "the significance of Friel's interests for purposes of [its] motion to [re]intervene." He concluded that the uncertainty of Friel's temporary operational status (between 1998 and 2001) made its interest more problematic than compelling. Not only did he fault Friel for not reintervening subsequent to the special master's decision on liability, but he failed to credit Friel's contention, put forward at the hearing on the motion to reintervene, that it was justified in leaving the case at the time Johnson restricted its complaint to money damages.[6]

We have examined the transcript of the motion hearing and can find no support for these rulings. To the contrary, at several points during the hearing, the motion judge questioned why Friel was not allowed to defend its interest prior to the August, 2001, settlement agreement awarding the contract to Johnson. Indeed, when the judge pressed Johnson's counsel for an explanation for its argument that Friel was derelict for not reintervening after the master's decision, counsel could not muster anything. The motion judge then commented that he did not think Friel had any reason to intervene at that stage. There followed an oblique reference to a mediation session conducted by a Superior Court judge after the master had filed his decision where the idea of awarding the contract to Johnson was initially discussed. The record is devoid of information regarding what happened at that time beyond what we have noted from the hearing transcript. There is no doubt, however, that the motion judge was apprised that Friel, through no fault of its own, was not present to state its perspective. Construing the analogous Fed.R.Civ.P. 24(a) in *Fiandaca* v. *Cunningham*, 827 F.2d 825, 833 (1st Cir. 1987), the United States Court of Appeals for the First Circuit suggested that where the parties to a case "negotiated a settlement that would have been contrary to the interest of the prospective interven[e]rs and affirmatively sought to

[6]Nothing in the special master's findings suggests an award of the contract to Johnson as a proper remedy for the city's violation of G. L. c. 30B. Thus, there was no rational basis for Friel to conclude that its interest was in jeopardy at that juncture of the proceedings.

392        60 Mass. App. Ct. 386 (2004)

Johnson Turf and Golf Management, Inc. *v.* City of Beverly.

block the attempted intervention," those parties did not adequately represent the prospective interveners.[7] See *McDonnell* v. *Quirk*, 22 Mass. App. Ct. at 128 (no adequate representation where existing parties "found it expedient to go in league" against proposed intervener).

In exercising his discretion, the motion judge commented that Friel's postjudgment bid to reintervene "would cause significant prejudice and delay to the parties to this litigation." He minimized any corresponding prejudice to Friel by concluding that Friel could pursue "its remedy for perceived wrongs in a separate action." That theme was echoed by Johnson's appellate counsel during oral argument of this appeal. He suggested that any contract or G. L. c. 30B claims Friel may have arising out of the settlement agreement could be litigated in a separate proceeding. When pressed by the panel, counsel indicated that, in fact, Friel had filed such an action which was presently pending in the Superior Court. However, as one member of the panel surmised, the city had raised several affirmative defenses to Friel's new action, including issue preclusion, pending of a prior action, and waiver.

We are not obliged to consider the question whether issue preclusion would apply in these circumstances, because the pertinent question is not whether Friel's interest could be protected in another action, but whether there "may" be a practical negative impact on the protection of that interest if intervention is not allowed. See *Cosby* v. *Department of Social Servs.*, 32 Mass. App. Ct. at 396-397. Using practical considerations as a guide, denying Friel the right to reintervene would impair its ability to question the conduct of Johnson and the city which resulted in the consent judgment.

In these circumstances, it seems clear to us that the motion judge mistakenly denied Friel's application for postjudgment reintervention in the instant case. There remain significant factual

---

[7]The Reporters' Notes to Mass.R.Civ.P. 24 state that rule 24(a) is identical to Fed.R.Civ.P. 24(a). Reporters' Notes to Mass.R.Civ.P. 24(a), Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 483 (LexisNexis 2003). Therefore, "the adjudged construction . . . given to the Federal rule[] is to be given to our rule[], absent compelling reasons to the contrary or significant differences in content." *Rollins Envtl. Servs., Inc.* v. *Superior Ct.*, 368 Mass. 174, 179-180 (1975).

disputes concerning the entry of the consent agreement and the actual prejudice to Friel's rights, if any. As Friel points out in its brief, legitimate concerns exist regarding the propriety of such a consent judgment and the city's apparent willingness to negotiate a contract that does not comply with the requisites of G. L. c. 30B and that may be at odds with the specifications of the RFP.

For these reasons, we reverse the order denying Friel's motion to reintervene and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*