FROSTAR CORP.[1] & another[2] vs. MARTIN J. MALLOY, trustee,[3] & others.[4]

No. 09-P-1050.

Suffolk. May 13, 2010. - September 17, 2010.

Present: TRAINOR, KATZMANN, & FECTEAU, JJ.

*Practice, Civil,* Intervention, Parties. *Contract,* Sale of real estate, Specific performance. *Real Property,* Sale, Specific performance.

In a civil action brought by plaintiffs who had sought unsuccessfully to purchase commercial real estate from a defendant trustee (seller), who ultimately sold the property to two other defendant trustees of a different trust (buyers), a Superior Court judge abused his discretion by denying the buyers' motion to intervene in a retrial of the plaintiffs' claims that the seller committed a breach of the purchase and sale agreement and the implied covenant of good faith and fair dealing, where the buyers' motion should not have been deemed untimely, given that they acted promptly in protecting their interest and there would have been no delay and no prejudice to any party [709-711]; where the buyers claimed appropriately an interest as the title holders of the premises and the real parties in interest that would be impaired by an order granting specific performance to the plaintiffs [711]; and where the seller could not adequately represent the buyers' interest in the litigation [711-713].

CIVIL ACTION commenced in the Superior Court Department on March 2, 1998.

[1]Formerly known as Commercial Cold Storage Corporation.

[2]Frostar, Inc. "The two named plaintiffs in the present action, Frostar Corp. and Frostar Inc., are affiliated entities; both are wholly owned by Frostar Industries, Inc., which, in turn, is wholly owned by Candeloro J. Maggio, Jr. Frostar Corp. was the lessee under . . . [a] lease . . . [of the premises at 16 Howard Street in the Roxbury section of Boston from defendant lessor Martin J. Malloy, as trustee of the 33 Norfolk Avenue Realty Trust] (and the holder of the right of first refusal it created), while Frostar Inc. was purchaser under the purchase and sale agreement at the center of the present dispute, by assignment of the rights held by Frostar Corp. . . ." *Frostar Corp.* v. *Malloy,* 63 Mass. App. Ct. 96, 99 n.11 (2005). As in the earlier opinion, for ease of reference we refer to the plaintiffs interchangeably as "Frostar."

[3]Of 33 Norfolk Avenue Realty Trust.

[4]Michael S. Lapuck and Kenneth M. Lapuck, as trustees of RFD Realty Trust and 1164 Washington Street Realty Trust; and Royal Fire Door Company, Inc.

Following review by this court, 63 Mass. App. Ct. 96 (2005), the case was heard by *Charles T. Spurlock*, J.

*Michael J. McHugh* (*Stacey L. Coady* with him) for the plaintiffs.

*William E. Gens* for Martin J. Malloy.

*James R. DeGiacomo* (*Elizabeth A. Kowal* with him) for Michael S. Lapuck & others.

KATZMANN, J. This is a case with a considerable history. It began in 1998 in Superior Court, and then came before us in *Frostar Corp.* v. *Malloy*, 63 Mass. App. Ct. 96 (2005) (*Frostar I*), where we granted a new trial. The instant appeal arises from the retrial and the judgment ordering specific performance of a contract to convey property. The parties cross-appeal on several issues. We conclude that the judge abused his discretion by denying a motion to intervene, pursuant to Mass.R.Civ.P. 24(a), 365 Mass. 769 (1974), brought by Michael and Kenneth Lapuck, the subsequent buyers of the property and real parties in interest. We vacate the judgment and remand for a new trial.

*Background.* As a preliminary matter, it is necessary that we retrace some of the prior proceedings and the evidence.

> "On October 1, 1984, Frostar Corp. entered into a lease with [the defendant] Malloy of the premises at 16 Howard Street in the Roxbury section of Boston. The lease included a right of first refusal, pursuant to which Frostar Corp. held the right to match any bona fide offer by a third party to purchase the property.
>
> "In 1996, Malloy listed the property for sale with a real estate agent. . . . On November 4, 1997, defendant Michael Lapuck, as trustee of the 1164 Washington Street Realty Trust, submitted to Malloy's agent a written offer to purchase the property." (Footnotes omitted.)

*Id.* at 98. Frostar matched the bona fide offer by Michael Lapuck of $287,000 to purchase the premises at 16 Howard Street, which Frostar had leased from Malloy. This resulted in a purchase and sale agreement for the property between Frostar and Malloy with an effective closing date of March 2, 1998 (the agreement specified March 1, a Sunday).

On March 2, 1998, the transaction did not close. Frostar

commenced suit, charging Malloy with breach of contract, breach of the implied covenant of good faith and fair dealing, misrepresentation, unfair and deceptive practices in violation of G. L. c. 93A, and seeking specific performance and damages, and injunctive relief. As against the Lapucks, Frostar alleged tortious interference with advantageous business relationship and violation of G. L. c. 93A. Frostar also obtained a lis pendens. Malloy sold the property to the Lapucks on May 7, 1998; the Lapucks agreed to indemnify Malloy against loss or damage resulting from Frostar's suit, and to defend Malloy in the suit. *Id.* at 102 & n.14.[5]

In *Frostar I* we remanded the case for a new trial on counts II and IV of the complaint, which claimed that Malloy breached the purchase and sale agreement and the implied covenant of good faith and fair dealing, respectively. Those counts did not name the Lapucks as defendants. In July and October, 2005, immediately after remand and leading up to the second trial, the Lapucks and Malloy submitted joint status memoranda. There they asserted that the Lapucks "are the true parties in interest in this matter as they are the ones directly affected if Frostar is awarded specific performance. The Lapucks legally and rightfully bought the property in issue in March[,] 1998[,] and their business, Royal Fire Door Company, Inc., has occupied the property since that time. As such, the Lapucks have a right to continue to defend their interests." The Lapucks did not, however, formally move to intervene under Mass.R.Civ.P. 24(a).

On January 27, 2006, as the trial approached before a different Superior Court judge, Frostar moved pursuant to Mass. R.Civ.P. 19(a), 365 Mass. 765 (1974), to join as necessary parties Michael S. Lapuck and Kenneth M. Lapuck, as trustees of RFD Realty Trust. Frostar stated:

"As the owners of the property which is the subject matter of this action and to which the plaintiffs seek specific performance the Lapucks as Trustees are the real parties in interest. . . . [T]he plaintiffs are seeking specific performance of an agreement for the sale of property to it, property now owned by the Lapucks. Should the plaintiffs

---

[5]For a discussion of the proceedings at the first trial, see *Frostar I, supra.*

prevail and be awarded specific performance (as occurred
at the first trial) the only remedy would be for this Court
to order the Lapucks to disgorge the property, selling it
directly to the plaintiffs (under the terms of the original
purchase and sale agreement) or to order the rescission of
the sale from Malloy to the Lapucks, then ordering Malloy
to complete the terms of the purchase and sale agreement
between him and Frostar. Unless the Lapucks are parties,
subject to the orders of this Court, the plaintiffs will be
unable to obtain complete relief. Therefore, the Lapucks
are necessary parties pursuant to Mass.R.Civ.P. 19(a)."

At a pretrial hearing on January 30, 2006, the judge stated that
the request for a necessary party determination was premature
since, if the jury determined that the Malloy defendants were
not in breach of contract, then specific performance would not
be ordered.

On January 31, 2006, counsel for the Lapucks indicated that
they would file a motion to intervene, arguing that "this case,
no matter what the finding is, has one impact, and that's against
the Lapucks, not Malloy." Counsel for the Lapucks also noted
that there was an indemnification agreement with the Malloys,
stating that "he can't represent Malloy and [counsel for Malloy]
can't represent the Lapucks." "The Malloys were the parties to
the agreement. We bought the property and indemnified Malloy
as a result of the purchase. That's basically why I'm here."
Counsel further stated: "[A]ll I'm asking is that I be given the
opportunity as I had in the first trial to participate, not to duplicate,
but to participate in the trial by examining the witnesses."[6]

The judge denied the motion to intervene and made clear to
the Lapucks' counsel that any similar motion on their behalf

---

[6]Although counsel for Maggio had filed a motion to join the Lapucks as
necessary parties, he argued against participation by counsel for the Lapucks
in retrial. He stated: "In light of the fact that if the Lapucks are going to be
involved in this, it would be after the jury trial, both counsel here seem to be
representing different people, the Lapucks and the Malloys. Who is going to
examine? They shouldn't be allowed to both examine all of our witnesses if
there is only one party in interest as of the jury trial. . . . [Counsel for the
Lapucks] has no standing to be questioning my client or any of the other wit-
nesses until we get to the part after this trial when we're no longer before the
jury and apparently the Lapucks will now be in this."

would also be denied.[7] In the judge's view, "[counsel for the Lapucks] won all of his counts on appeal. There's nothing against the Lapucks in this case." The judge noted that the defendant was Malloy, not the Lapucks, and there was no indication that the Lapucks had "anything to do with the formation of the contract between Malloy and Frostar." Expressing a concern that participation by counsel for the Lapucks would be duplicative of counsel for the Malloys, the judge denied counsel's request to make an opening statement. Moreover, stating that he was "not going to cover the same ground twice with a witness by both defendants," the judge said that "[i]f there is anything that I think [counsel for the Lapucks] has a right to cross-examine on, I'll let him in. If not, I won't." When counsel for Malloy said that in the first trial he and counsel for the Lapucks had "divided things up," the judge said that would not be done in the retrial. The judge stated that "[counsel for the Lapucks] would have a very limited role. I'm not going to cover the same ground twice with a witness." The next day, the Lapucks filed a motion to intervene as of right pursuant to Mass.R.Civ.P. 24(a)(2), which was denied.[8] At trial, counsel for the Lapucks, who was present throughout the proceedings, was not permitted to give an opening or closing statement or participate in the examination of any witness other than Michael Lapuck. After trial, the judge entered judgment against Malloy and ordered the Lapucks to specifically perform the contract and transfer title to Frostar.

*Discussion.* a. *Mass.R.Civ.P. 24(a)(2).* Upon timely application, a judge should grant a party's motion for intervention of right when "(1) the applicant claims an interest in the subject of

[7]The judge also denied a motion by Frostar to "amend and/or clarify" the judgment so as to allow it an evidentiary hearing on damages.

[8]The motion stated, in part: "Although there were no claims remaining against the Lapucks, the Appeals Court recognized that they were the real party in interest in this matter and allowed them to file briefs and argue without a formal motion to intervene. Similarly, the parties were in front of this court in October[,] 2004[,] where Lapucks' counsel took lead arguments in pretrial matters. There has been no secret as to the Lapucks' overriding interest in this matter and the parties have been proceeding since October[,] 2004[,] with Lapucks' counsel as lead counsel. For the plaintiffs to ask on the day of trial to limit the Lapucks' counsel role, treads on the toes of the Lapucks' legal right to defend their interest and is advanced for the sole purpose of prejudicing the Lapucks." At trial, counsel for the Lapucks was permitted to participate in the examination of only one witness, Michael Lapuck.

the action, (2) he is situated so that his ability to protect his interest may be impaired as a practical matter by the disposition of the action, and (3) his interest is not adequately represented by the existing parties." *Johnson Turf & Golf Mgmt., Inc.* v. *Beverly*, 60 Mass. App. Ct. 386, 389 (2004). See *Bolden* v. *O'Connor Café of Worcester, Inc.*, 50 Mass. App. Ct. 56, 61 (2000). We review a judge's decision to deny the motion under an abuse of discretion standard. See *Cosby* v. *Department of Social Servs.*, 32 Mass. App. Ct. 392, 395 (1992); *Bolden, supra*.

b. *Timely application.* Rule 24(a) furnishes clarity on the role and interest of an intervener, so that persons who have no formal role to play are not allowed to participate in a trial without a determined interest. The Lapucks did not file a written motion to intervene until the second day of trial.[9] Mass.R.Civ.P. 7(b), 365 Mass. 748 (1974) (motions "shall be made in writing"). However, it is clear from the record that the Lapucks (whose counsel had been the lead attorney in the first trial) believed, and the court was on notice that they believed, that they were parties to this action. This understanding was made clear in March, 2005, in the defendants' first submission to the Superior Court after the remand in *Frostar I.*

Furthermore, there would have been no prejudice to any existing parties to allow the motion, as it was undisputed that Lapucks' counsel was prepared for trial on that day and no delay would have actually occurred. See *Peabody Fedn. of Teachers, Local 1289, AFT, AFL-CIO* v. *School Comm. of Peabody*, 28 Mass. App. Ct. 410, 413 (1990) (considering whether intervention would have caused delay in trial). Because the Lapucks acted promptly in protecting their interest and there would have been no delay and no prejudice to any party, the motion should not have been deemed untimely. Contrast *Giuliano* v. *Piontkowski*, 62 Mass. App. Ct. 932, 934 (2004) (motion to intervene untimely where prospective interveners "knew or should have known of this litigation" for thirty months). See *Negron-Almeda* v. *Santiago*, 528 F.3d 15, 25 (1st Cir. 2008) (one-month "period of delay is so slight as not to render that intervention motion untimely")[10]; *R & G Mort. Corp.* v. *Federal Home Loan Mort.*

---

[9]We note that pursuant to appropriate procedure, parties who wish to intervene should do so formally by motion prior to trial.

[10]The Reporters' Notes to Mass.R.Civ.P. 24 state that rule 24(a) "is identical

*Corp.*, 584 F.3d 1, 9 (1st Cir. 2009) (motion to intervene properly denied as untimely where it was filed over two months after learning of suit and motion aimed at disrupting settlement between existing parties would have prejudiced those parties); *National Assn. of Chain Drug Stores* v. *New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 40 (1st Cir. 2009) ("Because prejudice from the delay is not apparent . . . the refusal to allow intervention might be debatable even though district courts enjoy much latitude on timeliness decisions").[11]

c. *Claimed interest.* The Lapucks claim appropriately an interest as the title-holders of the premises and the real party in interest that would be impaired by an order granting specific performance to Frostar. See, e.g., *Twomey* v. *Commissioner of Food & Agric.*, 435 Mass. 497, 500-501 (2001) (owner of property, the "real party in interest," was permitted to intervene of right), citing *Berman* v. *Linnane*, 434 Mass. 301, 304 (2001) (intervention of attorney's client allowed because client was the real party in interest on claim for breach of settlement agreement); *Owen* v. *Kessler*, 56 Mass. App. Ct. 466, 469 n.5 (2002). Contrast *Commonwealth* v. *One Hundred Twenty-Five Thousand One Hundred Ninety-One Dollars*, 76 Mass. App. Ct. 279, 281-282 (2010) (judgment creditor did not have significant interest to intervene as of right in a civil forfeiture action because he did not show "an ownership, possessory, or security interest in at least a portion of the property"), quoting from Smith, Prosecution and Defense of Forfeiture Cases par. 9.04[2][a], at 9-70.11 (2009). As specific performance would run directly against the Lapucks, they had a right to protect their interest in the property.

d. *Adequate representation.* The Lapucks argue that Malloy

---

to Federal Rule 24(a)." Reporters' Notes to Mass.R.Civ.P. 24(a), Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 502 (LexisNexis 2008). Therefore, "we follow the construction given to the Federal rules 'absent compelling reasons to the contrary or significant differences in content.' " *Van Christo Advertising, Inc.* v. *M/A-COM/LCS*, 426 Mass. 410, 414 (1998), quoting from *Rollins Envtl. Servs., Inc.* v. *Superior Ct.*, 368 Mass. 174, 179-180 (1975). See *Alphas Co., Inc.* v. *Kilduff*, 72 Mass. App. Ct. 104, 110 (2008).

[11]See generally 7C Wright & Miller, Federal Practice & Procedure § 1916 (3d ed. 2010). Timeliness must have "accommodating flexibility toward both the court and the litigants" (quotation omitted). *Id.* at 529. "The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." *Id.* at 541-548.

could not adequately represent their interest in the litigation because Malloy had "no interest in the outcome of the litigation" where the Lapucks had an agreement to indemnify the defendant Malloy for all damages. We agree.

"An applicant for intervention as of right has the burden of showing that representation may be inadequate, although the burden 'should be treated as minimal.' " *United States Postal Service* v. *Brennan,* 579 F.2d 188, 191 (2d Cir. 1978), quoting from *Trbovich* v. *United Mine Workers,* 404 U.S. 528, 538 n.10 (1972); *B. Fernandez & Hnos., Inc.* v. *Kellogg USA, Inc.,* 440 F.3d 541, 547 (1st Cir. 2006) (holding that intervener need only make a "minimal" showing that representation would prove inadequate and "[t]he potential for this litigation to have a greater adverse impact on [the intervener] is a sufficient basis for concluding that [the existing party] may not serve as an adequate proxy"). Here, the Lapucks sought to preserve their ownership interest in the property. Malloy, however, had no interest in the outcome of the litigation other than the requirement in the contract that Malloy litigate in good faith and the remote chance that the Lapucks would be able to prove that Malloy failed to act in good faith in prosecuting the case. Cf. *New York Pub. Interest Research Group, Inc.* v. *Regents of Univ. of the State of New York,* 516 F.2d 350, 352 (2d Cir. 1975) (allowing pharmacists owner to intervene because they "will make a more vigorous presentation of the economic side of the argument" than the original defendants). Malloy, having sold the property, and having been indemnified by the Lapucks, was indifferent as to the outcome of the suit. Malloy conveyed his interest in the property to the Lapucks, who had indemnified him not only against all legal expenses, but also against any damages that might be assessed against him or as a result of the litigation. In short, he could not "adequately represent" the Lapucks' interests in the litigation. See *Mayflower Dev. Corp.* v. *Dennis,* 11 Mass. App. Ct. 630, 636-637 (1981) ("The question whether the prospective intervener is adequately represented necessarily turns to a comparison of the interests asserted by the applicant and the existing party . . . if his 'interest is similar to, but not identical with that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it

is clear that the party will provide adequate representation for the absentee' "), quoting from 7A Wright & Miller, Federal Practice and Procedure § 1909, at 524 (3d ed. 2010); *Carlson v. Withers*, 16 Mass. App. Ct. 924, 925 (1983) (because the defendants have no interest in the outcome of the litigation, the intervener's "interest is [not] adequately represented by existing parties"), quoting from Mass.R.Civ.P. 24(a)(2).

We also note that "the pertinent question is not whether [the intervener's] interest could be protected in another action, but whether there 'may' be a practical negative impact on the protection of that interest if intervention is not allowed." *Johnson Turf & Golf Mgmt., Inc.* v. *Beverly*, 60 Mass. App. Ct. at 392. The Lapucks were prejudiced because the denial of the motions to intervene impaired their ability to argue their case to the jury in a case where significant factual disputes exist as to the applicability of the covenant of good faith and fair dealing. As has been noted, the judge refused to allow the Lapucks to make an opening statement or otherwise participate unless the court deemed it "necessary," despite the Lapucks' attorney's role as lead counsel in the first trial and extensive preparation. Cf. *League of United Latin Am. Citizens* v. *Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) (an intervener may "litigate fully"), quoting from 7C Wright & Miller, Federal Practice & Procedure § 1920, *supra* ("the intervenor is treated as if the intervenor were an original party"). Here, the Lapucks come into the proceedings to "assert a right superior . . . to some or all of the parties touching the subject matter of the litigation." *Check* v. *Kaplan*, 280 Mass. 170, 178 (1932). Moreover, owners have an inherent right in equity to protect the value of their property, and are prejudiced when denied this right. See *Twomey* v. *Commissioner of Food & Agric.*, 435 Mass. at 506 (a customary privilege of ownership is "an owner's ability to sell property at its highest value"), citing *Dupee* v. *Boston Water Power Co.*, 114 Mass. 37, 43 (1873) ("The power to purchase and hold [property] implies the power to sell, and to sell upon such terms as to secure the highest price"). That the trial strategies and interests of the Lapucks and Malloy were not identical is reflected by the Lapucks' opposition when Malloy's attorney sought to introduce in evidence the indemnification agreement.[12]

---

[12]That agreement was not shown to the jury.

*Conclusion.* We note that deference is given to the trial court in the management of a trial and the judge's resolution of competing considerations. See *Beninati* v. *Beninati,* 18 Mass. App. Ct. 529, 535 (1984); Mass.G.Evid. § 611(a) (2010). The judge here sought to establish a procedure which would reduce duplication and prolongation of the trial, while also permitting some involvement by the Lapucks' counsel under his supervision. In our view, however, because the Lapucks' direct participation in the trial would be the only meaningful way for them to protect their interests, the wrong balance was struck in denying the Lapucks' motion to intervene.[13]

The order denying the motion to intervene is reversed. The judgment is vacated, and the case is remanded to Superior Court for a new trial on counts II and IV of the complaint.[14]

*So ordered.*

---

[13]We would also note that the Lapucks should have been deemed necessary parties pursuant to Mass.R.Civ.P. 19(a)(2)(i), 365 Mass. 765 (1974). See *Kitras* v. *Aquinnah,* 64 Mass. App. Ct. 285, 290 (2005) ("A person with an interest in land ordinarily should be joined if a judgment could affect that interest"), citing *Uliasz* v. *Gillette,* 357 Mass. 96, 105 (1970). Cf. *National Lumber Co.* v. *LeFrancois Const. Corp.,* 430 Mass. 663, 670 & n.16 (2000) ("Although we are not required to resolve the issue here, the record owner at the time the [mechanics] lien is enforced . . . may qualify as a 'necessary party' under Mass.R.Civ.P. 19[a], 365 Mass. 765 [1974]"); *Morgan* v. *Evans,* 39 Mass. App. Ct. 465, 470-471 (1995) (individuals who had ownership interest in property in question were "indispensable parties" to action, and therefore landowners' motion to amend their complaint to add such individuals as additional plaintiffs was to be allowed despite untimeliness).

Indeed, the judge recognized that the Lapucks' involvement was necessary regarding specific performance. That the Lapucks were necessary parties is strongly suggestive that they should have been permitted to intervene as of right. See Reporters' Notes to Mass.R.Civ.P. 24(a), *supra* (The amendment to rule 24[a] "provides that an applicant is entitled to intervene in an action when his position is comparable to that of a person under rule 19[a][2][i] unless his interest is already adequately represented by existing parties"). See also *Atlantis Dev. Corp.* v. *United States,* 379 F.2d 818, 825 (5th Cir. 1967) ("[T]he question of whether an intervention as a matter of right exists often turns on the unstated question of whether joinder of the intervenor was called for under new Rule 19"); *MasterCard Intl., Inc.* v. *Visa Intl. Serv. Assn., Inc.,* 471 F.3d 377, 389-390 (2d Cir. 2006) ("[I]f a party is not 'necessary' under Rule 19[a], then it cannot satisfy the test for intervention as of right under Rule 24[a][2]"); *Johnson Turf and Golf Mgmt. Inc.* v. *Beverly,* 60 Mass. App. Ct. at 392 n.7.

[14]We need not reach the merits because the judge abused his discretion by

denying the motion to intervene brought by the Lapucks. Nonetheless, on remand, we advise the parties as follows:

First, under *Frostar I*, the judge appropriately excluded evidence of damages and denied Frostar's motion to amend or clarify seeking damages for restitution. See *Frostar I*, 63 Mass. App. Ct. at 108-109 (*"With damages eliminated*, however, there is no basis for the defendants' contention that the judge abused her discretion in ordering specific performance" [emphasis supplied]). Nor was the provision unenforceable as against public policy.

Second, although we do not presume that the evidence on retrial will necessarily be the same as in the prior proceedings, we do note that on the record before the judge in this case, it could have been concluded that Malloy violated the implied covenant of good faith and fair dealing notwithstanding that he met his contractual obligation under the purchase and sale agreement to furnish Frostar with an environmental report. See, e.g., *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 101-102 (1977) (abusive timing of contractual performance); *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 472-473 (1991) (pretextual use of contract language). See also *Frostar I, supra* at 107. Contrast *Owen* v. *Kessler*, 56 Mass. App. Ct. at 471-472 (no pretextual use of any discretionary right, no evidence seller attempted to sabotage deal, seller gained no advantage, "seller simply sat back, did nothing, and waited for the agreed-upon deadline to come").